STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

PATRICIA A. M., Defendant-Appellant.

Supreme Court

*No. 91–0105–CR. Oral argument December 1, 1992.—Decided June 3, 1993.*

(Also reported in 500 N.W.2d 289.)

544

For the plaintiff-respondent-petitioner the cause was argued by *Marguerite M. Moeller*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the defendant-appellant there were briefs by *Michael W. Tobin, Douglas J. Rebholz* and *Law Offices of Michael W. Tobin*, Milwaukee and oral argument by *Michael Tobin*.

WILLIAM A. BABLITCH, J.   The State of Wisconsin (State) seeks review of a court of appeals' decision which reversed the conviction of Patricia M. (Patricia). At their joint trial, a jury found Patricia and her husband David M. (David) guilty of ten counts of sexual assault and one count of incest with a child, all as party to a crime. The charges involved Jeremiah M. (Jeremiah), Patricia's and David's eight-year-old son and Tony R. (Tony), Jeremiah's eleven-year-old friend. Twice pretrial, Patricia moved for a severance of her trial. Patricia objected to the introduction of certain evidence which she contended was admissible only against David claiming that it would prejudice her right to a fair trial. Her motions were denied. The court of appeals concluded that the joint trial was prejudicial because evidence concerning uncharged instances of David's anal contact with Jeremiah was irrelevant as to Patricia and was admitted without a limiting instruction from the court cautioning the jury to disregard the evidence as to Patricia.

We conclude that the evidence concerning uncharged instances of anal contact between David and Jeremiah was relevant with respect to Patricia. The evidence enhanced the credibility of Jeremiah's testimony against both David and Patricia and helped explain to the jury how the charged acts could have occurred in the manner Jeremiah described. We further conclude that the probative value of the anal contact evidence was not substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, and thus the evidence was not required to be excluded pursuant to sec. 904.03, Stats. Lastly, we hold that even if the introduction of the anal contact evidence was error due to other evidentiary statutes, any error was nonetheless harmless. Accordingly, we reverse the decision of the court of appeals.

As summarized by the court of appeals, testimony at trial elicited the following facts which for purposes of this review are not in dispute.

> On August 25, 1989, Tony spent the night at Jeremiah's. The two boys were showering together when Patricia entered the bathroom, reached past the shower curtain, and fondled both boys' genitals for several minutes.
>
> After their shower, the boys entered the living room on their way to their bedroom. The living room also served as Patricia's and David's bedroom. Patricia was sitting naked on an opened sofa bed; David was on a cot a few feet away. Patricia directed each boy to take turns engaging in various sex acts with her, both individually and simultaneously, while David watched. David did not get physically involved but occasionally verbally encouraged the boys' actions. The entire episode, bathroom to living room, took place over approximately one hour. *State*

*v. Patricia A.M.,* 168 Wis. 2d 724, 729–30, 484 N.W.2d 380 (Ct. App. 1992).

In October of 1989, Patricia and her husband David were charged with ten counts of sexual assault of a child under 13 and one count of incest, all as party to the crime. At trial, Jeremiah and Tony gave similar accounts as to all of the acts alleged against Patricia. However, Jeremiah was reluctant to testify about any behavior involving David. As the court of appeals noted, Jeremiah was particularly noncommittal when questioned about David's role—active or passive—in any sexual activity with him. As to anal contact or intercourse, Jeremiah at one point stated in his testimony that he did not remember and at another point flatly denied that he and David ever engaged in that activity. Both David's and Patricia's theory of defense was that the boys had fabricated the entire story.

The State then called as a witness, Dr. Paul Gochis, a physician on the Sexual Assault Program team in the emergency department at a local hospital. Dr. Gochis had examined Jeremiah when the investigation first began. Over both defense counsels' objections, Dr. Gochis testified that Jeremiah had related to him the conduct alleged in the criminal complaint, as well as uncharged incidents of sodomy with David. Dr. Gochis explained that by using an anatomically correct doll, Jeremiah was able to demonstrate both the uncharged and charged sexual conduct. Dr. Gochis also testified that a physical exam of Jeremiah indicated anal scarring and loss of anal sphincter tone, and that such findings suggested repeated anal penetration. Dr. Gochis opined that the physical evidence was consistent with Jeremiah's statement that David had sodomized him. The medical report describing the physical evidence was admitted as "other acts" evi-

dence under sec. 904.04(2), Stats. Jeremiah's alleged statements to Dr. Gochis concerning David's acts were admitted as a prior inconsistent statement under sec. 908.01(4)(a)1. Jeremiah had testified at trial that he remembered making statements to Dr. Gochis but claimed not to remember what he told the doctor. His alleged statements about Patricia's acts were admitted as a prior consistent statement under sec. 908.01(4)(a)2.

Twice pretrial, Patricia moved to sever her trial from that of her husband's. Patricia objected to Dr. Gochis' testimony about evidence pertaining to the uncharged sexual abuse, claiming that it was relevant only to David and its admittance at the joint trial would prejudice her right to a fair trial. Both of Patricia's motions were unsuccessful, as were her subsequent motions for a mistrial. Likewise, her sec. 809.30, Stats., motion seeking postconviction relief on the issue of severance and admission of "other acts" evidence was denied.

Patricia appealed to the court of appeals arguing that the circuit court erred by refusing to sever her trial from her husband's or, in the alternative, by failing to give the jury a limiting instruction, thus prejudicing her separate interest. In a 2–1 decision the court of appeals overturned Patricia's conviction concluding that the "joint trial was prejudicial because damaging evidence, irrelevant as to Patricia, was admitted and the limiting instruction [that is] required . . . once severance is denied was not given." *State v. Patricia A.M.*, 168 Wis. 2d at 729. We accepted the State's petition for review.

We first address whether the anal contact evidence was relevant with respect to Patricia. The circuit court admitted the evidence in question concluding that it

was admissible under sec. 904.02(2), Stats. Section 904.04(2) allows the introduction of evidence of other crimes, wrongs, or acts when offered to prove the "motive, opportunity, intent, . . ." of the person. Both the State and Patricia agree that the circuit court's application of sec. 904.02(2) to the admission of evidence indicating anal injury to Jeremiah was incorrect with respect to Patricia in that the anal penetration evidence did not encompass "other acts" committed by Patricia. However, the State contends that the anal contact evidence was nonetheless admissible because it was relevant evidence as to Patricia and was not otherwise excluded by sec. 904.03.[1] *See State v. Holt,* 128 Wis. 2d 110, 124, 382 N.W.2d 679 (Ct. App. 1985) ("[i]t is well-established that if a trial court reaches the proper result for the wrong reason, it will be affirmed."); *Liberty Trucking Co. v. Department,* 57 Wis. 2d 331, 342, 204 N.W.2d 457 (1973) (An appellate court may sustain a lower court's holding on a theory or on reasoning not presented to the lower court). We agree that the anal contact evidence was relevant as to Patricia.

The first step in any question concerning the admissibility of evidence is whether the evidence is relevant. Chapter 904, Stats., of the Wisconsin Statutes provides the rules concerning relevant evidence and its admissibility. Chapter 904 indicates that evi-

---

[1] Section 904.03, Stats., provides:

**Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

dence which is not relevant is not admissible. Section 904.02. Section 904.01 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." If evidence is relevant, as defined by sec. 904.01, it is admissible, unless its introduction would be prohibited by another rule or the constitution of the United States or Wisconsin. Section 904.02.[2] Even if relevant, evidence may be excluded if its probative value is substantially outweighed by other factors, including the risk of unfair prejudice. Section 904.03.[3]

"The criterion of relevancy is whether the evidence sought to be introduced would shed any light on the subject of inquiry." *State v. Lindh,* 161 Wis. 2d 324, 348, 468 N.W.2d 168 (1991) (quoting *Rogers v. State,* 93 Wis. 2d 682, 688, 287 N.W.2d 774 (1980)). In *Berg v. State,* 41 Wis. 2d 729, 739, 165 N.W.2d 189 (1969), this court stated, quoting with approval from 1 Wharton's, Anderson, *Criminal Evidence* (12th ed.), p. 284–87, sec. 148:

'Evidence is relevant when it is persuasive or indicative that a fact in controversy did or did not

---

[2] Section 904.02, Stats., provides:

All relevant evidence is admissible, except as otherwise provided by the constitutions of the United States and the state of Wisconsin, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible.

[3] Section 904.03, Stat., provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

exist because the conclusion in question may be logically inferred from the evidence. The criterion of relevancy is whether or not the evidence adduced tends to cast any light upon the subject of the inquiry. Evidence of any fact is admissible as relevant which might establish the hypothesis of innocence, or show the defendant's guilt. Any evidence that assists in getting at the truth of the issue is relevant; in other words, *any fact which tends to prove a material issue is relevant, even though it is only a link in the chain of facts which must be proved to make the proposition at issue appear more or less probable. Relevancy is not determined by resemblance to, but by the connection with, other facts.*'

The court of appeals concluded that the evidence suggesting anal penetration was irrelevant as to Patricia in that it did not relate to any of the charges against her. The State concedes that the evidence did not relate to Patricia in the sense that none of the evidence suggested any "acts" by Patricia:

> [a]lthough the medical report and testimony of Dr. Gochis constituted evidence of other crimes by codefendant David M., this is not true with respect to Patricia M. This is because Jeremiah never indicated that his mother had sexual contact with his anus ... nor was there any attempt by the prosecutor to somehow link the defendant to the boy's physical injuries. . . . it was clear throughout the trial that David M. alone was being blamed for sodomizing his son. States Brief at 10–11.

However, the State and Judge Brown in dissent at the court of appeals contend that the anal contact evidence was relevant as to Patricia because it supported the credibility of Jeremiah's testimony concerning the sexual abuse by Patricia. Judge Brown explained:

551

[T]he whole of Patricia's defense was that her son fabricated *all* sexual charges as part of an ongoing rebellion by the child against *both David and Patricia*. Throughout the trial, Patricia continually attacked her son's credibility by assigning improper motives to him. She was helped by her son's recalcitrance on the witness stand.

That being the case, the physician's testimony was helpful to rehabilitate the son's testimony. *State v. Patricia A.M.*, 168 Wis. 2d at 740 (Brown, J., dissenting in part).

The State emphasized this point in its brief before this court and at oral argument. It argues that the evidence was relevant to enhance the credibility of Jeremiah's testimony:

Before Dr. Gochis testified, Patricia M.'s attorney made it abundantly clear during his cross-examination of Jeremiah that the defense theory was that Jeremiah had a motive for falsifying the charges against his parents. . . .

All of these theories explored during cross-examination of Jeremiah were designed to create the impression that the boy had manufactured the charges against his parents. Proof that the child exhibited physical manifestations of repeated anal penetration made it much more likely that he was *truthful* when he indicated to Dr. Gochis that his father had sodomized him, and this in turn made it more likely that Jeremiah's accusations against his mother were *truthful* as well. . . .

For the above reasons, evidence that Jeremiah had been the victim of repeated anal penetration was highly relevant to assessing the *truthfulness* of his allegations against both parents . . . . State's Brief at 12–15.

We find the State's reasoning persuasive. A successful showing that a witness has proven credible in the past would have a tendency to make the facts to which he or she testified at trial more probable in the eyes of the jury than it would be without such testimony. In this case, the fact that Jeremiah's past allegations concerning sexual abuse by his father were proven credible by medical evidence was likely to make it more probable in the eyes of the jury that he was telling the truth at trial concerning abuse by Patricia.

Furthermore, the anal contact evidence was relevant against Patricia because it helped explain to the jury how the charged acts could have occurred in the manner Jeremiah described. As the State explained in its brief, "[k]nowing that Jeremiah had been repeatedly sodomized would help the jury understand why he acquiesced in his mother's directives to engage in intercourse, fellatio and cunnilingus and why his story that his father was present during this encounter was plausible." Without the knowledge that David had sodomized Jeremiah, the jury might have questioned Jeremiah's allegations that David sanctioned Patricia's activity with Jeremiah and passively participated as a spectator without Jeremiah asking him to intercede on his behalf. Consequently, without the anal penetration evidence the jury may have discredited Jeremiah's testimony against Patricia in its entirety. Accordingly, we conclude that the anal contact evidence was relevant and thus admissible pursuant to sec. 904.01, Stats.

Concluding that the anal contact evidence was relevant pursuant to sec. 904.01, Stats., does not end our inquiry. Evidence which is relevant may nonetheless

be excluded pursuant to sec. 904.03 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury . . . ." Section 904.03. "Evidence is unduly prejudicial when it threatens the fundamental goals of accuracy and fairness of the trial by misleading the jury or by influencing the jury to decide the case upon an improper basis." *State v. DeSantis,* 155 Wis. 2d 774, 791–92, 456 N.W.2d 600 (1990). The Federal Advisory Committee's Note to the Wisconsin Rules of Evidence, 59 Wis. 2d R. 74 describes "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Furthermore, pursuant to sec. 904.03, it is not enough that the evidence will prejudice a defendant; exclusion is required only if the evidence is *unfairly* prejudicial. *State v. Bedker,* 149 Wis. 2d 257, 266, 440 N.W.2d 802 (Ct. App. 1989). Unfairness attaches if the evidence tends to influence the outcome by improper means, or it appeals to the jury's sympathies, arouses its sense of horror, promotes its desire to punish, or otherwise causes the jury to base its decision on extraneous considerations. *State v. Gulrud,* 140 Wis. 2d 721, 736, 412 N.W.2d 139 (Ct. App. 1987). Applying these dictates, we conclude that the probative value of the anal contact evidence was not substantially outweighed by the danger of unfair prejudice to the defendant, confusion of issues, or the risk of jury confusion. Thus, exclusion under sec. 904.03 was not warranted.

The anal contact evidence was presented to the jury after Jeremiah testified explicitly about the sexual abuse committed by Patricia. Unquestionably, Jeremiah's explicit testimony about his mother's directives to him to engage in intercourse, fellatio and

cunnilingus with her was repugnant to the jurors. The additional evidence that her co-defendant had engaged in anal intercourse with their son was not likely to have generated any more hostility toward Patricia than already existed in the minds of the jurors.

Furthermore, the anal contact evidence was not likely to confuse or mislead the jurors. The record indicates that nothing took place at the trial that would have led the jurors to inappropriately attribute the anal abuse to Patricia. In fact, the circuit court commented at a December 6, 1989 pretrial hearing that the anal contact evidence would have virtually no impact on Patricia since it went to her husband's conduct. Dr. Gochis testified that Jeremiah told him that only his father had anal contact with him. Testimony of Dr. Gochis also elicited that there were no physical findings regarding the allegations of sexual assault against Patricia. In addition, the prosecutor made it clear throughout the trial that the anal penetration dealt with David's actions. During his opening statement, the prosecutor told the jury that they would hear "Dr. Gochis testify that he found scarring to the anus of Jeremiah . . . which was consistent with the nature of the allegations that Jeremiah had made with respect to the contact that he and his dad engaged in." Thus, the jury could not have been confused or misled as to who was responsible for the acts of sodomy. However, the evidence did provide the jury with an opportunity to gain insight as to why Jeremiah's version of the charged acts was understandable and credible. We conclude that the anal contact evidence was relevant against Patricia and not otherwise excluded by sec. 904.03, Stats.

After oral argument was heard in this case we asked that the parties file additional briefs addressing the following question posed by this court:

> Assuming for purposes of argument only that the testimony of Dr. Gochis re: the father's activities with his son, Jeremiah, including Dr. Gochis' physical exam of the son and his conclusion, is relevant to the credibility of Jeremiah under sec. 904.01 and is not otherwise excluded by sec. 904.03, does either sec. 904.04(2) or sec. 906.08(2) or any other section operate to exclude this evidence with respect to the character for truthfulness of the victim, Jeremiah?

We conclude that an analysis and examination of the application of these statutory sections to the evidence at issue in this case is unnecessary. Even if the statutory sections were applicable and acted to bar the admission of the anal contact evidence, the admission of such evidence at Patricia's trial was nonetheless harmless. Because we conclude that any error in admitting the evidence was harmless, we also do not address Patricia's arguments with respect to the rules governing severance and *sua sponte* instructions.

The test for whether an error was harmless is whether there is no reasonable possibility that the error contributed to the conviction, a reasonable possibility being one which is sufficient to undermine confidence in the outcome of the proceeding. *State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985); *In Interest of J.A.L.,* 162 Wis. 2d 940, 972, 471 N.W.2d 493 (1991). This test is consistent with the "harmless beyond a reasonable doubt" standard of *Chapman v. California,* 386 U.S. 18, 24 (1967). *See State v. Rewolinski,* 159 Wis. 2d 1, 28, 464 N.W.2d 401. Thus, a

reviewing court must look to the totality of record and determine whether the error contributed to the trial's outcome. *State v. Evers,* 139 Wis. 2d 424, 447, 407 N.W.2d 256 (1987).

Because there is overwhelming evidence, even absent the anal contact evidence, to support Patricia's conviction, any error in admitting the anal contact evidence was harmless. The record reveals that the evidence of sexual assault by Patricia against Jeremiah and Tony was overwhelming such that there is no reasonable possibility that the outcome would have been different had the anal contact evidence been excluded or a limiting instruction given as to its applicability to Patricia.

At trial, Jeremiah testified extensively as to the abusive acts of his mother. Jeremiah's trial testimony was consistent with his pretrial statement to the police which was read at trial by a police lieutenant. In addition, Tony testified extensively as to Patricia's abusive acts, and his testimony concerning the events was remarkably similar to that of Jeremiah's. His pretrial statement was also consistent with his trial testimony and was read in at trial. While the consistent testimony of both victims constituted overwhelming evidence of Patricia's guilt, the State also produced the testimony of Jeremiah's twelve-year-old neighbor. The neighbor testified that she witnessed Patricia and David engaged in sexual activity with Jeremiah during the same month the charged crimes occurred. The testimony of a third party, disinterested witness that she saw the defendants engaged in sex acts with the victim had to be startling evidence to the jury. Thus, we conclude that the evidence was such that a jury, in the complete absence of the anal contact evidence, would

have returned a verdict of guilty against Patricia. Accordingly, we reverse.

*By the Court.*—The decision of the court of appeals is reversed.