STATE of Wisconsin, Plaintiff-Respondent,

v.

David A. FOY, Defendant-Appellant.

Court of Appeals

*No. 96–0658–CR. Submitted on briefs October 11, 1996.—Decided November 27, 1996.*

(Also reported in 557 N.W.2d 494.)

632

For the defendant-appellant the cause was submitted on the briefs of *Paula K. Doyle* of *Doyle Law Office* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Mary V. Bowman*, asst. attorney general.

Before Dykman, P.J., Vergeront and Deininger, JJ.

VERGERONT, J. David Foy appeals from a judgment of conviction for delivery of cocaine base within 1000 feet of a park, as a repeater, in violation of §§ 161.41(1)(cm) and 161.49, STATS., and from an order denying his motion for a new trial. He contends that his trial counsel was ineffective for failing to demand a written summary of his oral statements from the prosecution during discovery and for failing to call a police officer as a witness to show certain inconsistencies between that officer's report of the incident and the report of an officer who did testify. We conclude that assistance of counsel was not ineffective. Foy also contends that the trial court erroneously exercised its discretion in refusing to permit defense counsel to withdraw and testify on his behalf. We conclude that the trial court did erroneously exercise its discretion but that this error did not prejudice Foy. We therefore affirm.

## BACKGROUND

Foy was charged with two counts of delivery of cocaine base, one for an incident occurring on May 28, 1993, and one for an incident occurring on June 4, 1993. Both involved a controlled purchase by police informant Anthony Bates. The testimony with respect

to the first incident was that Bates accompanied undercover officer Scott Wasemiller on that evening in an unmarked police car to the Merrill Neighborhood in Beloit. Wasemiller stopped the car and remained in the car. Bates got out of the car, made the purchase from a man standing on the corner with some other people, and got back in the car. Wasemiller testified that he could see the person from whom Bates made the purchase and identified that person as Foy. He also testified that he radioed a description of the seller. Another officer, Bobby Pittman, was conducting surveillance in the neighborhood and heard the description over his radio. He then saw a man meeting that description walking on a nearby street. Pittman testified that he knew Foy from previous contact and the man he saw was Foy.

On June 4, 1993, in the evening, Bates accompanied undercover officer Tina Virgil in an unmarked squad car to the same area. Virgil stopped the car. A man came over to the passenger side of the car, where Bates was sitting, and through the open window sold cocaine base to them while Virgil was sitting in the driver's seat. Virgil identified the man who made this sale as Foy.

After he made the purchase on May 28, Bates told Wasemiller the seller's name was Danny but he did not know Danny's last name. Bates told Virgil on the evening of June 4 that the seller was Danny Evans. Bates later learned that Danny Evans was the name of a probation agent. Bates testified that Danny Evans was the cousin of Foy, that Bates had known them both, and that when he saw Foy previously he had called him Danny. When Bates told the police officers that the seller might not be Danny Evans, the officers told him to find out who he was. Bates then identified a photo-

637

graph of Foy as the person who sold him drugs on May 28, 1993, and June 4, 1993. Danny Evans testified that he was a probation officer, he was Foy's cousin, he knew Bates, and he had recently spoken to Bates because he was Bates' brother's probation agent.

The theory of defense was that Foy was not the man who sold Bates the cocaine on either occasion. Defense counsel's cross-examination challenged the accuracy of the officers' identifications of Foy, the credibility of Bates, and the reliability of his photo identification of Foy. The defense presented two witnesses. Foy's father testified that Foy had had a red tint in his hair at certain times. An investigator for the defense testified and showed photos concerning the location where the drug buys occurred. He stated that when he was seated in a car as Wasemiller said he had been, he (the investigator) could not see the corner where the May 28 drug buy took place. On rebuttal, Wasemiller testified that some of the investigator's assumptions about location were inaccurate.

In the direct examination of Virgil, the prosecutor elicited testimony that Virgil had overheard Foy make a comment to his defense counsel, Attorney Janice Balistreri, when she (Virgil) walked into the courtroom just before a prior proceeding in the case. The comment was: "That bitch ain't never going to remember me." In cross-examining Virgil, Attorney Balistreri referred to what she herself heard Foy say. The prosecutor objected and the court sustained the objection.

Shortly thereafter when the jury was in recess, Foy moved for permission either for Balistreri to testify concerning what she heard Foy say or for her to withdraw and have alternate counsel appointed for Foy, which would necessitate a mistrial. Another attorney with the public defender's office argued the motion and

questioned Balistreri in an offer of proof. Balistreri testified that when Virgil walked into the courtroom, she (Balistreri) was sitting next to Foy and Foy said to her: "That bitch ain't never seen me before. She don't know me. I ain't never seen her before, either." The court denied the motion, concluding that SCR Rule 20:3.7 (Callaghan 1996), "Lawyer as Witness," did not permit Balistreri to testify and that a mistrial in order to substitute new counsel was not necessary.

The jury acquitted Foy on the first count and convicted him on the second count. The trial court denied Foy's postconviction motion for a new trial on the second count based on ineffective assistance of counsel.

## INEFFECTIVE ASSISTANCE OF COUNSEL

To succeed on a claim of ineffective assistance of counsel, Foy must show that his attorney's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). There is a strong presumption that the attorney has rendered effective assistance and made all significant decisions exercising reasonable professional judgment. *Id.* at 689. In addition, Foy must show that there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Sanchez,* 201 Wis. 2d 219, 236, 548 N.W.2d 69, 76 (1996). Claims of ineffective assistance of counsel present mixed questions of law and fact. *State v. Pitsch,* 124 Wis. 2d 628, 633-34, 369 N.W.2d 711, 714 (1985). The trial court's findings of fact will not be disturbed unless clearly erroneous. *Id.* at 634, 369 N.W.2d at 714. However, the determinations of whether counsel's performance was deficient and whether the defendant was

prejudiced are questions of law, which we review de novo. *Id.* at 634, 369 N.W.2d at 715.

Foy claims that Balistreri was ineffective because she did not request oral statements made by the defendant that the district attorney planned to use at trial. Section 971.23(1), STATS., requires the State to provide a written summary of such statements upon demand. Balistreri testified at the postconviction hearing that she did not know that Foy's statement to her had been overheard or that the State knew of it. She stated she had no strategic reason for not demanding a written summary of his oral statements; it was an error. The court determined that Balistreri's performance was not deficient. We agree.

Deficient performance means that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *State v. Johnson,* 153 Wis. 2d 121, 127, 449 N.W.2d 845, 847 (1990). In determining whether there was deficient performance, we make every effort to avoid relying on hindsight. *Id.* We focus on counsel's perspective at the time of trial, and the burden is on the defendant to overcome a strong presumption that counsel acted reasonably within professional norms. An attorney's performance is not deficient unless it is shown that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *State v. Guck,* 170 Wis. 2d 661, 669, 490 N.W.2d 34, 38 (Ct. App. 1992).

Foy's argument on deficient performance focuses on the importance of Virgil's testimony. However, there is no evidence that Balistreri had any knowledge; until

Virgil's testimony, that Foy's statement to counsel had been overheard, and there is no evidence that Balistreri should have known it was overheard. The statement Balistreri heard Foy make asserted his innocence, in effect, and would not have alerted her to a concern that someone else overheard a possibly damaging statement. There is also no evidence that Balistreri knew of any other oral statements of Foy that should reasonably have prompted the request. It is easy to say in hindsight that Balistreri should have made the discovery demand just to be sure. But we are not persuaded that her failure to do so was outside the wide range of professionally competent assistance.

Foy also argues that Balistreri was ineffective because she did not call Officer Greg Phillips as a witness to contradict certain testimony of Virgil. Virgil testified that the transaction on June 4, 1993, occurred at Yates and Porter between 8:00 and 9:00 p.m. Phillips testified at the postconviction hearing that he conducted surveillance of the June 4, 1993 drug transaction. His report states that the transaction occurred at approximately 10:32 p.m. at Hall and Porter. He testified that the report says "Hall" rather than "Hull" because he dictated the report and that is how it was transcribed. There was testimony at the postconviction hearing that Hull and Yates are one block apart.

Balistreri testified that she was aware of the inconsistencies in the two officers' reports and she had intended to cross-examine Phillips on this when the prosecutor, who had subpoenaed him, called him to testify. However, when the prosecutor did not call him it "just slipped [her] mind to call him." The trial court decided that Balistreri's failure to call Phillips was not deficient performance and, even if it was, it did not

prejudice Foy. We do not decide whether performance was deficient because we conclude there was no prejudice. The one block discrepancy in the location of the transaction and the time difference does not undermine Virgil's identification of Foy, which was based on sitting in the driver's seat of the car while Foy leaned in the open passenger window to make the sale. We conclude it is not reasonably probable that Phillips' testimony would have resulted in an acquittal on the second count.

## DEFENSE COUNSEL'S TESTIMONY

Foy argues that the trial court erroneously exercised its discretion in not permitting Balistreri to testify. The alternatives Foy presented to the trial court were that another public defender could take over the defense for the limited purpose of Balistreri's testimony, or the court could permit substitution of counsel entirely, which would necessitate a mistrial. Foy contends that Virgil's version of his statement was significantly different than Balistreri's. According to Foy, "That bitch ain't going to never remember me" implies that Virgil had seen Foy before, while the statement, "That bitch ain't never seen me before. She don't know me," is an assertion of Foy's innocence consistent with his defense that Virgil's identification of him was faulty. Since identification was the critical issue in the case, Foy argues, the trial court erroneously exercised its discretion in denying both alternatives that would permit defense counsel to testify.

Whether an attorney should testify in a case in which he or she is an advocate is a matter for the trial court's discretion. *Harris v. State*, 78 Wis. 2d 357, 369, 254 N.W.2d 291, 298 (1977). Attorneys are competent

to testify, *Peterson v. Warren*, 31 Wis. 2d 547, 568, 143 N.W.2d 560, 569 (1966), and are not generally prohibited as an evidentiary matter from testifying for their clients. *Peck v. Meda-Care Ambulance Corp.*, 156 Wis. 2d 662, 670, 457 N.W.2d 538, 542 (Ct. App. 1990). There is, however, a longstanding ethical prohibition against an attorney testifying for his or her client in most cases. *Id.* at 671, 457 N.W.2d at 542. Supreme Court Rule 20:3.7 (Callaghan 1996), the current version of the rule relating to lawyers as witnesses, provides in pertinent part:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

As the comment to this rule explains, combining the roles of advocate and witness can prejudice the opposing party because it may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof. SCR 20:3.7 cmt. (Callaghan 1996).[1]

Because of the ethical concerns, courts should not usually permit an attorney who is an advocate in a trial to testify in that trial, especially where the value of the testimony is small or collateral to the ultimate issues.

---

[1] Another concern is that there may be a conflict between the lawyer's testimony and the client's interest, *see* SCR 20:3.7 cmt. (Callaghan 1996), but that is not present in this case.

*Harris*, 78 Wis. 2d at 369, 254 N.W.2d at 298. However, that is not an absolute rule and a court may in its discretion permit an attorney to testify when justice requires. *See Peterson*, 31 Wis. 2d at 568, 143 N.W.2d at 569. An attorney is not incompetent to testify simply because the testimony violates the ethical code. *Estate of Weinert*, 18 Wis. 2d 33, 36-37, 117 N.W.2d 685, 687 (1962).

Whether to grant a mistrial is also a matter for the trial court's discretion, and we give the trial court's decision great deference. *State v. Bunch*, 191 Wis. 2d 501, 507, 529 N.W.2d 923, 925 (Ct. App. 1995). When a decision is within the trial court's discretion, we review it to determine whether the court examined the relevant facts, applied the proper standard of law, and engaged in a rational decision-making process. *Id.* at 506-07, 529 N.W.2d at 925.

In denying permission for Balistreri to testify, the trial court stated that it did not see a difference in the two versions of Foy's statements. It also stated that Balistreri could argue to the jury, based on Virgil's testimony, that what Foy meant was that Virgil was never going to recognize him because she had never seen him. The court concluded that no exceptions to SCR 20:3.7 (Callaghan 1996) were applicable and therefore defense counsel could not testify. The court also concluded that defense counsel had "ways of handling this matter short of [a mistrial]" and therefore a mistrial to substitute counsel was not necessary.[2]

---

[2] The court did not address the State's argument that Foy could testify to what he said, nor Balistreri's testimony that in discussions with Foy before trial they decided he would not take the stand. We interpret the court's reference to "ways of handling this matter" to mean that Balistreri could argue about the

The initial question is whether the trial court was correct in deciding that there was no difference between Virgil's testimony of Foy's statement and that offered by defense counsel. We review this de novo as a question of law because the relevant facts are undisputed. *See State v. Williams*, 104 Wis. 2d 15, 21-22, 310 N.W.2d 601, 604-05 (1981). We conclude the statements are different and that the difference is relevant. The statement that Virgil testified to implies that Virgil had seen Foy before but will not remember. It may be possible to interpret that statement more favorably to Foy—as another way of saying that she had never seen him before and that is why she would not remember him. But this latter interpretation is strained. And even if both interpretations were equally plausible, one is inculpatory. A jury could reasonably conclude that Foy's statement as testified to by Virgil was, in effect, a confession.

On the other hand, according to Balistreri, Foy unequivocally stated that Virgil had never seen him before and he had not seen her. Because Foy's defense is based on a challenge to Virgil's identification of Foy, the difference between the two versions of Foy's statement is relevant to a central issue in this case. The prosecutor acknowledged to the trial court that Virgil's testimony was relevant and stated that "it is one piece of evidence which obviously the state hopes will be persuasive to the jury . . . [although] clearly not the critical piece of evidence. . . ."

interpretation of Foy's statement as testified to by Virgil. We assume the court did not mean that a mistrial was unnecessary because Foy could testify. On appeal, the State does not argue that Balistreri's testimony was unnecessary because Foy could testify.

We next consider the trial court's conclusion that defense counsel could not testify in this trial because it would violate SCR 20:3.7 (Callaghan 1996). The rule provides that when an attorney is likely to be a necessary witness on a contested issue not related to legal services, the attorney should disqualify himself or herself as an advocate; however if disqualification would be a substantial hardship on the client, the attorney may continue as an advocate and still testify. "The substantial hardship" exception is directed to the effect on the client of counsel's disqualification. The rule contemplates a balancing between the interests of the client in continuing to be represented by the same attorney, against prejudice to the opposing party if the attorney acts in both roles.[3]

---

[3] The comment to the rule provides in pertinent part:

> The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.
>
> . . . .
>
> [P]aragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the opposing party. Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness. . . .

SCR 20:3.7 cmt. (Callaghan 1996).

This balancing test is not pertinent in this case, where the attorney with the client's agreement requests, as one alternative, permission to withdraw and have other counsel substituted to represent the client in a new trial. Had the court granted this request, there would be no violation of the rule. The rule does not make it unethical for an attorney acting as advocate to testify on a contested matter when the court denies the attorney's request to withdraw and substitute other counsel. The trial court's apparent interpretation of the rule was erroneous.[4]

Although the trial court made errors of law in exercising its discretion, we may still search the record to determine whether it provides a basis for the court's decision not to permit Balistreri to testify in this trial and not to grant a continuance and mistrial. *See State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983). We conclude that the record does not support the decision and that, under the circumstances of this case it was an erroneous exercise of discretion not to permit Balistreri to testify under one alternative or the other.

In addition to the nature and significance of the attorney's testimony, which we have already discussed, appropriate factors in deciding whether to permit an attorney to testify are whether the attorney knew ahead of time that the testimony would be necessary and what caused the need for the testimony. *See Peterson*, 31 Wis. 2d at 568, 143 N.W.2d at 569-70. Balistreri did not know Foy's statement was overheard and had no way of knowing that her testimony might be needed

---

[4] The trial court did not explain its conclusion that the rule did not permit defense counsel to testify.

until Virgil testified. On the other hand, the State knew that Foy and his counsel were the only other witnesses to the statement. The prosecutor chose to present Virgil's testimony on Foy's statement because she considered it favorable to the State. When a party "open[s] the door" to a matter to which it is clear opposing counsel is a witness, that party is hardly in a position to claim it is unfair to permit opposing counsel to testify. *Id.*

Against these factors favoring Balistreri testifying must be weighed either the delay and inconvenience of a continuance which will result in a mistrial, or the awkwardness and potential confusion to the jury if defense counsel were to testify at this trial. Either alternative—a mistrial or an advocate as witness—presents significant concerns for the trial court, and we recognize the necessity for giving trial courts a wide range of discretion in addressing these concerns. However, we are persuaded that it was an erroneous exercise of discretion to deny both alternatives, preventing Balistreri's testimony altogether. We conclude that, when the prosecutor elicits testimony that can only be contradicted by defense counsel or the defendant on an issue relevant to the defense, if defense counsel did not foresee or could not reasonably have foreseen the dilemma, and if the defendant has already decided not to testify, justice requires that defense counsel be permitted to testify—either in that trial or a new trial with substituted counsel.

Having concluded that the trial court erroneously exercised its discretion, we must determine whether the error was harmless. An error is harmless if there is no reasonable possibility that the error contributed to

the conviction. *State v. Patricia A.M.*, 176 Wis. 2d 542, 556, 500 N.W.2d 289, 295 (1993). A reasonable possibility is one which is sufficient to undermine confidence in the outcome of the proceeding. *Id.* We must look to the totality of the record. *Id.* at 556-57, 500 N.W.2d at 295.

We conclude it is not reasonably possible that, had the jury heard defense counsel's testimony, the outcome would have been different. We focus on Virgil's identification of Foy, which was the heart of the State's case on the second count.[5] She was sitting in the driver's seat when the man who sold the drugs leaned into the car through the open window on the passenger side and conversed with Bates. Virgil handed Bates the money for the sale and the man handed two bags to Virgil. Virgil unequivocally identified Foy as that man, and there was no significant testimony undermining her identification.

■■■

If the jury had heard Balistreri's version of Foy's courtroom statement and decided to believe that version rather than Virgil's version, that would prove only that Foy told his attorney he was not the man who sold drugs that night. The jury already knew, by virtue of the conduct of the defense, that Foy claimed Virgil's identification was erroneous. Nevertheless, the jury

---

[5] Bates also identified Foy, but we do not consider that in our analysis because Bates identified Foy on the first count, on which Foy was acquitted. The difference in outcome between the two counts, then, must rest on the weaker evidence of identification by the officers for the May 28 incident. Officer Wasemiller was sitting in the car, at night, while the man he identified as Foy was standing on the street corner with others, and there was evidence from the defense investigator on the inability to see the corner from a car parked in that position. Officer Phillips did not see the transaction take place.

was persuaded by Virgil's identification. We conclude it is not reasonably possible that the jury would find Virgil's identification of Foy less reliable even if it found Virgil's version of Foy's courtroom statement less reliable than Balistreri's version. We are convinced that the strength of Virgil's identification of Foy was such that the jury would have returned a guilty verdict on the second count even if it had heard Balistreri's testimony.

*By the Court.*—Judgment and order affirmed.