STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronald KEITH, Defendant-Appellant.†

Court of Appeals

*No. 96–2332. Submitted on briefs July 9, 1997.—Decided December 30, 1997.*

(Also reported in 573 N.W.2d 888.)

†Petition to review denied.

61

On behalf of the defendant-appellant, the cause was submitted on the briefs of *T. Christopher Kelly* of *Thomas, Kelly, Habermehl & Wood, S.C.* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Mary E. Burke*, assistant attorney general.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

ROGGENSACK, J.   Ronald Keith appeals a judgment concluding that he is a sexually violent person, and the subsequent order committing him to the custody of the State of Wisconsin, Department of Health

and Family Services for control, care and treatment. Keith maintains that the State's commitment petition should have been dismissed for lack of jurisdiction because it was filed more than ninety days after he had begun to serve a consecutive sentence on a non-violent offense. He also challenges several evidentiary rulings, the prosecutor's comment on his refusal to speak with the State's clinical psychologist, and the constitutionality of ch. 980, STATS. However, we conclude that a ch. 980 petition need not be filed until ninety days from a release date calculated in any part based on a sexually violent offense, that any evidentiary errors were harmless, that Keith's counsel focused attention on Keith's refusal to be interviewed by the State's expert witness, thereby inviting responsive comments by the prosecutor, and that ch. 980 is constitutional under binding precedent. Accordingly, the judgment and order of the circuit court are affirmed.

### BACKGROUND

Keith was convicted of one count of first-degree sexual assault on March 8, 1984 and sentenced to fifty months in prison. On that same date, he was also convicted of one count of second-degree sexual assault for which he was placed on probation for five years. On September 7, 1989, following a probation revocation, Keith was sentenced to ten years imprisonment on the second-degree sexual assault count, with credit for 462 days served. On November 27, 1990, Keith was convicted of a fourth-degree sexual assault, and was sentenced to serve six months consecutive to the second-degree sexual assault count.

Before Keith was sentenced on the fourth-degree sexual assault count, his mandatory release date would

have been December 11, 1993.[1] After the fourth-degree sexual assault sentence was added, barring additional time for violations of prison regulations, his release date should have been April 11, 1994. *See State ex rel. Parker v. Sullivan*, 184 Wis. 2d 668, 517 N.W.2d 449 (1994).[2] However, based on one of our decisions which was reversed, *State ex rel. Parker v. Fiedler*, 180 Wis. 2d 438, 509 N.W.2d 440 (Ct. App. 1993),[3] the Department of Corrections (DOC) recalculated Keith's mandatory release date as June 3, 1994. The supreme court's issuance of *Turner II* on June 15, 1994, required that all prisoners being detained on the basis of *Turner I* be released by July 15, 1994, that is, by the date of the opinion's remitter. *See State v. Carpenter*, 197 Wis. 2d 252, 541 N.W.2d 105 (1995). Keith fell into this category,[4] and was scheduled for release on July 15, 1994.

On July 14, 1994, the State filed the present ch. 980 petition alleging that Keith was a sexually violent person. Keith countered that the circuit court lacked jurisdiction to hear the petition because it had not been timely filed, and he moved to dismiss on both jurisdictional and constitutional grounds. The circuit court initially granted Keith's motion to dismiss on the

---

[1] Keith argues that he finished serving the second-degree sexual assault sentence on approximately January 8, 1994. This discrepancy is apparently explained by the affidavit of a Green Bay Correctional Institution employee which states that Keith's mandatory release date was modified several times due to misconduct.

[2] This case will be referred to below as *Turner II*.

[3] This case will be referred to below as *Turner I*.

[4] The DOC recalculated Keith's mandatory release date as June 3, 1994, rather than April 11, 1994. Again, this discrepancy presumably resulted from intervening infractions of prison regulations.

ground that ch. 980 constituted an *ex post facto* law. However, this court summarily reversed the circuit court order after the *Carpenter* and *Post*[5] cases were decided by the supreme court on December 8, 1995. The circuit court then denied Keith's motion to dismiss on jurisdictional grounds, ruling that Keith was appropriately detained based on *Turner I* at the time the petition was filed, and that his continuous sentences should be treated as one sentence for a sexually violent offense.

At the trial of the ch. 980 petition, a jury found that Keith had been convicted of a sexually violent offense, that he had a mental disorder, and that his disorder created a substantial probability that he would engage in future acts of sexual violence. The court entered judgment on the verdict and ordered Keith committed. On appeal, Keith again raises jurisdictional and constitutional challenges, in addition to several alleged evidentiary errors. Additional facts necessary for resolution of these questions will be set forth below.

## DISCUSSION

### Standard of Review.

■

Construction of a statute, or its application to undisputed facts, is a question of law, which we decide independently, without deference to the circuit court's determination. *Truttschel v. Martin*, 208 Wis. 2d 361, 364–65, 560 N.W.2d 315, 317 (Ct. App. 1997).

■

The admission of evidence lies within the sound discretion of the circuit court. *State v. Pepin*, 110 Wis.

---

[5] *State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (1995).

2d 431, 435, 328 N.W.2d 898, 900 (Ct. App. 1982). When we review a discretionary decision, we examine the record to determine if the circuit court logically interpreted the facts, applied the proper legal standard, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach. *State v. Rogers*, 196 Wis. 2d 817, 829, 539 N.W.2d 897, 901 (1995). In considering whether the proper legal standard was applied, however, no deference is due. This court's function is to correct legal errors. *See Vogel v. Grant-Lafayette Elec. Coop.*, 195 Wis. 2d 198, 209, 536 N.W.2d 140, 144 (Ct. App. 1995) (rev'd on other grounds) (noting that we may reverse a discretionary decision which was based on an erroneous view of the law). Therefore, we review *de novo* whether the evidence before the circuit court was legally sufficient to support its rulings. *State v. Hanna*, 163 Wis. 2d 193, 204–06, 471 N.W.2d 238, 244 (Ct. App. 1991). Furthermore, if evidence has been erroneously admitted or excluded, we will independently determine whether that error was harmless or prejudicial. *See State v. Patricia A.M.*, 176 Wis. 2d 542, 557, 500 N.W.2d 289, 295 (1993).

Finally, the application of constitutional principals to a set of facts is a question of law which we decide without deference to the circuit court's ruling. *State v. Patricia A.P.*, 195 Wis. 2d 855, 862, 537 N.W.2d 47, 49–50 (Ct. App. 1995).

## Chapter 980 Jurisdiction.

Under § 980.02(2)(ag), STATS., a commitment petition must allege that a subject is "within 90 days of discharge or release, on parole or otherwise, from a sentence that was imposed for a conviction for a sexu-

ally violent offense . . . ." Second-degree sexual assault is defined as a "sexually violent offense" by § 980.01(6), STATS. Fourth-degree sexual assault does not fall within the statutory definition. The parties agree, therefore, that when the petition was filed, Keith must have been within ninety days of release on the second-degree sexual assault conviction to enable the circuit court to exercise jurisdiction over the petition. Their dispute centers on whether release from a secured correctional facility after a consecutive sentence, following a sentence for a sexually violent offense, falls within the terms of § 980.02(2)(ag).

■
When we are asked to apply a statute whose meaning is in dispute, our efforts are directed at determining legislative intent. *Truttschel*, 208 Wis. 2d at 365, 560 N.W.2d at 317. In so doing, we begin with the plain meaning of the language used in the statute. *Id.* If the language of the statute clearly and unambiguously sets forth the legislative intent, our inquiry ends, and we must apply that language to the facts of the case. However, if the language used in the statute is capable of more than one meaning, we will determine legislative intent from the words of the statute in relation to its context, subject matter, scope, history, and the object which the legislature intended to accomplish. *Id.* We will also look to the common sense meaning of a statute to avoid unreasonable and absurd results. *DeMars v. LaPour*, 123 Wis. 2d 366, 370, 366 N.W.2d 891, 893 (1985).

■
We conclude that § 980.02(2)(ag), STATS., is ambiguous because it fails to address how consecutive sentences should be treated. Therefore, we look to the subject of consecutive sentence structures in general,

70

and the specific scope and object of the ch. 980 commitment proceedings in order to determine the legislative intent regarding the proper timing of commitment petitions for persons who are serving sentences for both sexually violent and non-violent offenses.

Section 302.11(3), STATS., provides that "consecutive sentences shall be computed as one continuous sentence" in the mandatory parole context. *Ashford v. Division of Hearings and Appeals*, 177 Wis. 2d 34, 42, 501 N.W.2d 824, 827 (Ct. App. 1993).[6] This includes supervised parole as well as periods of incarceration. *Id.* at 43, 501 N.W.2d at 827. Thus, Keith's second and fourth-degree sexual assault sentences constituted one continuous term of incarceration for the purpose of determining when he was eligible for parole. The most consistent interpretation of § 980.02(2)(ag), STATS., therefore, would be that a commitment petition must be filed within ninety days of release from a continuous term of incarceration, any part of which was imposed for a sexually violent offense. *See, e.g., State v. Robertson*, 174 Wis. 2d 36, 43, 496 N.W.2d 221, 224 (Ct. App. 1993) (noting that interrelated statutes should be construed together and harmonized to give each its full force and effect) *and State v. Allen*, 200 Wis. 2d 301, 309, 546 N.W.2d 517, 521 (Ct. App. 1996) (noting that a construction which places different statutes in conflict should be avoided).

The legislative history of § 980.02(2)(ag), STATS., also supports treating consecutive sentences as one continuous term for the purpose of determining when

---

[6]*Ashford* was decided on May 5, 1993. Therefore, the legislature is presumed to have been aware of the continuous sentence computation analysis when it enacted ch. 980 a year later on May 26, 1994. *See State v. Neumann*, 179 Wis. 2d 687, 707, 508 N.W.2d 54, 62 (Ct. App. 1993); 1993 Wis. Act 479.

to file a ch. 980 commitment petition. The Legislative Reference Bureau (LRB) note to the assembly bill which introduced the legislation stated that a petition should allege that a subject be "within 90 days of release from custody, commitment or supervision resulting from a conviction or adjudication for a sexually violent offense." 1994 Assembly Bill 3. The LRB's analysis of a legislative proposal is indicative of legislative intent. *Appleton Post-Crescent v. Janssen*, 149 Wis. 2d 294, 301, 441 N.W.2d 255, 257 (Ct. App. 1989). As the State observes, the LRB note suggests only a generalized conception of custody, rather than an examination of the numerical order in which various offenses were sentenced. This makes sense in light of ch. 980's twin objectives of protecting the public and treating high risk sex offenders to reduce the chance of future sexual misconduct. *Carpenter*, 197 Wis. 2d at 271, 541 N.W.2d at 112. The risk that a sex offender may re-offend is not affected by the order in which he serves time on consecutive sentences, and the public is not endangered until the offender is actually released into the community.

In short, there is absolutely no indication that the legislature intended to predicate ch. 980 proceedings on whether a sexually violent offense was the last sentence ordered in a string of consecutive sentences. Therefore, we conclude that within the context of § 980.02(2)(ag), STATS., the phrase "a sentence that was imposed for a conviction for a sexually violent offense" includes a sentence imposed consecutively to any sentence for a sexually violent offense.

**Former Testimony of Child Witness.**

Joshua N. testified against Keith at a parole revocation hearing in 1987. John W. testified against Keith at a preliminary hearing in 1988. Neither young man testified at Keith's commitment trial. Detective Steven Reinstra testified that he ran Joshua and John's names through Department of Transportation and Madison Police Department computer files, but was unable to locate their current addresses, although he had located other persons in that manner. At trial, the State introduced a portion of the transcript of Joshua's prior testimony on the theory that he was an unavailable witness. The circuit court received the transcript into evidence as Exhibit 10. John's transcript was offered and received as Exhibit 13. The only portion of either transcript that was read to the jury related to Joshua's age at the time of his alleged contact with Keith. Neither transcript was sent to the jury. However, the prosecutor did argue to the jury that Keith had assaulted John, based on the evidentiary foundation which Exhibit 13 provided.

Prior testimony given by a witness at trial or a hearing is admissible as a hearsay exception if the declarant is unavailable as a witness for a subsequent proceeding. Section 908.045(1), STATS. Section 908.04(1)(e), STATS., defines a witness as "unavailable" when the witness is "absent from the hearing and the proponent of [his] statement has been unable to procure [his] attendance by process or other reasonable means." The Judicial Council Committee Note of 1974 indicates that the term "reasonable means" requires due diligence, or a good faith effort to produce the witness, in accordance with prior precedent such as *La Barge v. State,* 74 Wis. 2d 327, 336, 246 N.W.2d 794, 798 (1976) (holding that issuance of subpoena and arrest warrant constituted sufficient effort) and *State*

*v. La Fernier*, 44 Wis. 2d 440, 444–45, 171 N.W.2d 408, 411 (1969) (holding that telephone conversation with witness's mother was insufficient).

The record demonstrates that the circuit court considered the question of the reasonableness of the State's efforts, and decided that using the means customary for finding witnesses was sufficient to be reasonable. The circuit court's conclusion was one which a reasonable person could reach. Therefore, we conclude it did not erroneously exercise its discretion.

## Police Report.

During Detective Reinstra's trial testimony, he also reviewed a police report he, himself, had written to refresh his recollection about the investigation he had conducted eight years earlier into John's allegations against Keith. The report contained out of court statements which John had made to Reinstra. After reviewing his report, Reinstra testified about the investigation and said that Keith had denied assaulting John. The officer did not repeat John's actual statements in his testimony. The report was labeled Exhibit 11 and was subsequently admitted, over Keith's objection. However, the report was not referred to again and was not sent to the jury.

The record demonstrates that the circuit court received the police report "for the purpose of refreshing Detective Reinstra's recollection," and considered it an exception to hearsay in that regard. Section 908.03(5), STATS., excepts from the hearsay rule recorded recollections such as:

A memorandum or record concerning a matter about which a witness once had knowledge but now

has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made when the matter was fresh in the witness's memory and to reflect that knowledge correctly.

Thus, a document reviewed by a witness may be independently admissible as a past recollection recorded only if it *fails* to refresh the witness's recollection. *State ex rel. Huser v. Rasmussen*, 84 Wis. 2d 600, 609, 267 N.W.2d 285, 290 (1978). Otherwise, it is only the witness's testimony, itself, which is admissible. Additionally, the document contained the hearsay statements of John, statements not taken under oath, which create additional evidentiary problems. Therefore, we conclude that the circuit court relied on an erroneous view of the law in regard to the admission of the report.

However, our analysis does not end there. Evidentiary errors are subject to a harmless error analysis. Generally, an error is harmless if there is no reasonable possibility that it contributed to the conviction. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231–32 (1985). A "reasonable possibility" is one which is sufficient to undermine confidence in the outcome of the proceeding. *Patricia A.M.*, 176 Wis. 2d at 556, 500 N.W.2d at 295. The burden of proof is on the beneficiary of the error to establish that the error was not prejudicial. *Dyess*, 124 Wis. 2d at 547 n.11, 370 N.W.2d at 232 n.11.

The State easily meets its burden in this case. The erroneously admitted report never went to the jury, and the hearsay statements contained within it were not read to the jury by either Reinstra in his testimony

or by the attorney for the State in closing argument. Therefore, there is no possibility that the report contributed to the conviction, and we conclude that its admission was harmless error.

### Department of Corrections Files.

Sandra Reno, a former DOC employee, testified that she had been Keith's assigned parole agent from 1987 to 1990 or 1991, while she was working at the DOC. In the course of her employment, Reno regularly consulted DOC probation and parole files. On direct examination, the State asked Reno whether Keith's files reflected any investigations for juvenile contacts that occurred prior to her assignment to his case. Keith objected, based on Reno's lack of personal knowledge. The objection was overruled on the ground that the files were documents kept in the ordinary course of business by the DOC. Reno then testified that Keith's files indicated fifteen prior investigations for contacts with minors. The files themselves were not offered as evidence.

Keith argues that the testimony was improperly admitted because it does not come within § 908.03(6), STATS., as a regularly-conducted-activity exception. The State, on the other hand, maintains that the circuit court's reference to the DOC files indicates that the testimony was admitted pursuant to the § 908.03(8) public-records exception. We need not resolve this dispute over the circuit court's ground for admission because we may affirm the admission of evidence so long as there is a proper basis for it in the law. *State v. Amrine*, 157 Wis. 2d 778, 783, 460 N.W.2d 826, 828 (Ct. App. 1990).

Probation and parole files compiled by the DOC fall within the definition of public records, an exception to hearsay under § 908.03(8), STATS. *State ex rel. Prellwitz v. Schmidt*, 73 Wis. 2d 35, 39, 242 N.W.2d 227, 228–29 (1976). Moreover, since ch. 980 is a civil proceeding, the records may be used to establish factual findings made during investigations, as well as activities or observations made by DOC personnel. *See Carpenter*, 197 Wis. 2d at 266–72, 541 N.W.2d at 110–13; *State v. Post*, 197 Wis. 2d 279, 294, 541 N.W.2d 115, 118 (1995). The only foundation required to introduce DOC records is that they be identified by a competent witness. *Prellwitz*, 73 Wis. 2d at 40 n.4, 242 N.W.2d at 229 n.4. Reno, a former DOC employee who had used Keith's probation and parole files during the course of her employment, was competent to identify the files, and did so. Therefore, we conclude the proper foundation was laid, and the admission of information from the reports was a proper exercise of discretion.

**Expert's Past Predictions.**

The State elicited expert testimony from Dr. Rodney Miller, a clinical psychologist, that it was substantially probable that Keith would engage in future acts of sexual violence. On cross-examination, defense counsel attempted to ask Miller whether his past predictions of future dangerousness had been tested for accuracy and validity. The circuit court sustained a relevancy objection.

Keith argues on appeal that Miller's past track record in predicting sexually violent behavior was relevant to the doctor's credibility. However, Keith failed to make an offer of proof as to Miller's past predictions. The record does not disclose whether Miller had been

100% or 0% accurate in his prior opinions about the probability of future events. We will not consider whether evidentiary error occurred absent a proper offer of proof. Section 901.03(1)(b), STATS.; *State v. Williams*, 198 Wis. 2d 516, 538, 544 N.W.2d 406, 415 (1996).

## Statement to Psychologist.

Keith placed forensic psychologist E. Rick Beebe on the stand to discuss whether it was his opinion that Keith suffered from a mental disorder, based partly on information which he gathered in an interview with Keith. Keith's claim of error arises from the following exchange:

[Keith's counsel]   Did you get a sexual history from Mr. Keith?

[State's attorney]   Objection.

[Court]   Sustained.

[Keith's counsel]   Judge, I am going to have to make an offer of proof on this at some point. I think this is relevant.

[Court]   An offer of proof on what? It is hearsay. If the answer to that question was, yes, the answer presupposes hearsay, counsel. It's inadmissible period. There is no need for an offer of proof on something which on its face is inadmissible. If you wish to point out to me one of the 24 exceptions, which I'm aware of—I don't think there are any more—I will take that into consideration.

[Keith's attorney]   Again, I'm not attempting to elicit any specific statements from my client, but only to show what areas the doctor covered during his interview. I'm not trying to get in Mr. Keith's

statements and offer them for the truth of whatever was said, but rather just to show what measures that the doctor took during the course of the interview.

[Court] I will allow testimony on the—in the subject areas, with this caution to the jury. It is hearsay, because these—this information comes from—from Mr. Keith, so it is hearsay and is by definition inadmissible, so you cannot consider it for the truth of the matter asserted, that is, that he did tell Dr. Beebe something or didn't, or for that matter that these things he said were true, only that the doctor covered certain subject areas with Mr. Keith and furnished him some information, the veracity of which we don't know. So go ahead.

Keith claims on appeal that the court's limiting instruction was erroneous because, under § 908.03(4), STATS., and *State v. Nelson*, 138 Wis. 2d 418, 431, 406 N.W.2d 385, 390 (1987), statements made to a psychologist for the purpose of assisting a diagnosis are not hearsay. He further argues that the instruction could have misled the jury into believing that it could not accept Keith's underlying statements as true, contrary to the general rule that the jury must determine whether facts underlying an expert's opinion are true. *See, e.g., Tony Spychalla Farms, Inc. v. Hopkins Agricultural Chemical Co.*, 151 Wis. 2d 431, 441, 444 N.W.2d 743, 748 (Ct. App. 1989).

However, Keith did not specifically object to the court's instruction at the time it was made. His only objection was to the exclusion of testimony regarding the topics which Beebe had discussed with Keith, exclusive of Keith's actual statements—an issue on which he prevailed. At no time, including when he was

asked to name any applicable hearsay exceptions, did Keith bring § 908.03(4), STATS., to the attention of the court. Arguments which are not raised at the trial level are deemed waived. *State v. Ledger*, 175 Wis. 2d 116, 135, 499 N.W.2d 198, 206 (Ct. App. 1993). Therefore, we conclude no reversible error occurred.

## Comments on Keith's Refusal to Be Interviewed.

Every defendant in a criminal case has a constitutional right to remain silent. U.S. CONST. amend. V; *Miranda v. Arizona*, 384 U.S. 436 (1966); WIS. CONST. art. I, § 8(1). The Supreme Court has held that the right to remain silent is violated when the State comments on a defendant's silence, during a criminal trial. *Griffin v. California*, 380 U.S. 609, 614 (1965). However, there are circumstances where comment is permitted. For example, when a defendant's counsel makes reference to defendant's unsworn reasons for not testifying, the State does not violate the defendant's constitutional right by responding to defense counsel's assertions to the jury. *State v. Edwardsen*, 146 Wis. 2d 198, 213, 430 N.W.2d 604, 610 (1988), *citing Bontempo v. Fenton*, 692 F.2d 954, 958–59 (3d Cir. 1982). As the supreme court pointed out, a defendant's presentation at trial may open a door for the prosecution that would otherwise remain closed:

> The prosecution's comment constituted no more than a pertinent and measured reply to defendant's calling attention to his own failure to testify. As such, the comment did not violate constitutional prohibitions safeguarding defendant's right to remain silent.

*Edwardsen*, 146 Wis. 2d at 215, 430 N.W.2d at 611.

In *State v. Zanelli*, 212 Wis. 2d 358, 569 N.W.2d 301 (Ct. App. 1997), we were asked to hold that a defendant in a § 980.05, STATS., trial has a constitutional right to remain silent which is violated when the State comments on the defendant's refusal to be evaluated by the State's expert. We concluded that such a defendant has the same constitutional right to remain silent as a defendant in a criminal trial, by virtue of § 980.05(1m), and that Zanelli's right to remain silent was violated by the State. *Id.* at 372, 569 N.W.2d at 306.

Keith contends, that based on *Zanelli*, his constitutional right to remain silent was violated when the prosecutor commented on his refusal to be interviewed by the State's clinical psychologist, Dr. Miller. He points out that during the course of Miller's testimony, the State established that he asked Keith, on at least two occasions, to meet with him, but Keith "chose to exercise his option to refuse to be evaluated and declined invitations to meet with me." Additionally, during the State's closing arguments, counsel commented that Miller "tried to interview Mr. Keith, gave him several opportunities to give them some input, and Mr. Keith declined on every opportunity."

However, Keith relates only part of what happened at trial. Reference to Keith's refusal to be interviewed by Miller was first made by defense counsel, in his opening statement, where he brought into question the quality of Miller's opinion because he had not conducted a clinical interview with Keith or performed psychological tests on him. He told the jury:

> Dr. Miller did not conduct a clinical interview with Ronald Keith and find out from Ron himself about Ron's own sex history and his sexual arousal pat-

terns. Dr. Miller did not do any psychological testing on Mr. Keith. . .

He also alerted the jury to the fact that Keith's expert, Dr. Beebe, had interviewed Keith and had performed psychological tests on him. Later, when he presented Beebe's testimony, Keith attempted to discredit Miller's opinion through Beebe's remarks about the detailed clinical interviews and psychological tests Beebe had conducted on Keith and their importance to a reliable prediction of future sexual violence.

> Q.   Of those different areas is the personal interview with the subject of the evaluation the most important?
>
> . . .
>
> A.   . . .(W)hen it comes to a sexual case, the fact that you haven't talked to a client and taken a sexual history is an absolute absence. It is like a doctor giving you pain medication and setting your leg without taking a medical history and an x-ray.

We review Keith's contention that his constitutional right was violated in the context in which the claimed violation occurred. And, just as the constitutional right to remain silent operates within established parameters in a criminal trial, we conclude that it stands on the same footings in a § 980.05, STATS., trial. Here, it was Keith who repeatedly alerted the jury to the lack of personal interactions between him and Miller. The State merely responded. Therefore, based on the tack Keith chose for trial, we conclude that Keith opened the door for the State to comment on his refusal to meet with or be tested by Miller and that

the State's response was appropriate under the circumstances of this case.

## Constitutionality of Chapter 980.

Finally, Keith claims that ch. 980 violates due process, equal protection, double jeopardy and *ex post facto* principles. However, the constitutionality of ch. 980 in each of these regards had been resolved by *Carpenter*, 197 Wis. 2d 252, 541 N.W.2d 105 and *Post*, 197 Wis. 2d 279, 541 N.W.2d 115. Keith acknowledges that this supreme court precedent is binding on this court, and merely preserves the issues for possible further review.

## CONCLUSION

The State's commitment petition was timely filed because Keith was still imprisoned on a sentence consecutive to a term imposed for a sexually violent offense. The circuit court's evidentiary rulings were all proper and/or harmless error, the constitutional right to remain silent was not violated by the State, and the statute itself is constitutional.

*By the Court.*—Judgment and order affirmed.