STATE of Wisconsin, Plaintiff-Respondent,

v.

Omark D. WARD, Defendant-Appellant.†

Court of Appeals

*No. 2010AP2552–CR. Submitted on briefs September 29, 2011.
—Decided October 18, 2011.*

2011 WI App 151

(Also reported in 807 N.W.2d 23.)

† Petition For Review Filed 11-17-11.

657

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mary D. Scholle*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Maura FJ Whelan*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Omark D. Ward appeals the judgment entered on jury verdicts convicting him of burglary, *see* WIS. STAT. § 943.10(1m)(a), and first-degree sexual assault while armed with a dangerous weapon, *see* WIS. STAT. § 940.225(1)(b), and from the circuit court's order denying his motion for postconviction relief without a hearing.[1] He claims that: (1) his trial lawyer was constitutionally ineffective; and (2) the trial court improperly prevented him from presenting a defense. We disagree and affirm.

---

[1] The Honorable Patricia D. McMahon handled the trial and entered the judgment. The Honorable Kevin E. Martens entered the postconviction order.

# I.

¶ 2. The State charged Ward with breaking into Enesha D.'s home and raping her. She told the jury that in early June of 2005, she was sleeping on the couch in her living room when she awoke to feel something "like a gun" and a man whispering " 'Bitch, where the money.' " At the time, her back was towards the man. The man told her to "walk with him," which she did. He took her to her bedroom and then sexually assaulted her several times. She testified that he had "much of his face covered where all you could see was his eyes."

¶ 3. After the man left, Enesha D. called the police. She was examined at a hospital after the assaults, and a nurse took a sample of semen from Ms. D.'s leg. Police found fingerprints matching Ward's in Ms. D.'s home. Ward did not argue before the circuit court, and does not argue now, that the fingerprints found in Ms. D.'s home were not his.

¶ 4. The State sent the DNA recovered from Ms. D. to the State Crime Laboratory to determine whether it matched Ward's DNA profile in the convicted-felon data bank. It did not. The State told a court commissioner at a July, 2005, hearing that it thus needed "additional time to complete its investigation" in order "to confirm the exclusion of Mr. Ward as the source [of the DNA found on Ms. D.] because it is theoretically possible that there was an error made in the entry into the data bank." The State asked the court commissioner to: (1) reduce Ward's "bail to $500," and (2) to order Ward to give a sample of his DNA so it "can be compared with the DNA profile of the semen found on the victim's leg." The court commissioner did as the State requested. Later, before the results of the "confirming" analysis came in, which showed that Ward's DNA

profile did match the semen taken from Ms. D.'s leg, the State, without Ward's objection, got a court commissioner to dismiss the charges without prejudice. The State reissued the charges in late August, 2005, and Ward waived his right to a preliminary examination, *see* WIS. STAT. § 971.02(1), in early September, 2005.

¶ 5. As noted, the profile of the DNA taken from Ward as a result of the court commissioner's order matched the DNA from the semen found on Ms. D.'s leg, even though the DNA data-bank entry for Ward did not. A "forensic scientist supervisor" with the Laboratory testified at a pre-trial evidentiary hearing that Ward's convicted-felon DNA data-bank sample had been misfiled. He explained that seeing if a DNA sample recovered from a crime scene matches a sample in the DNA data bank is only a preliminary screening:

> The convicted felon samples are not evidence samples. Convicted felon samples are treated differently than evidence is. The chain of custody is not as well documented and because of the way they're checked. They're sent through the mail and all of that; so we do confirmatory tests, especially when we get hits because we want to make sure the hit is true.
>
> So when we get a hit, a match between an offender's profile and evidence sample, we then ask for a standard sample that was taken from that person [the suspect whose DNA matched the DNA in the data bank] and treated as evidence and submitted to us to make sure there was no glitch in the data bank.

¶ 6. Ward's DNA also matched DNA recovered from the victim of a late-May, 2005, sexual assault, Dorothy S. When she could not identify Ward as her attacker at the preliminary examination, the State dismissed the charge against Ward for that crime. Ms. S. testified at Ward's pre-trial evidentiary hearing that

although she did not get a good look at the man who attacked her, she was sure it was not Ward.[2]

¶ 7. Ward complains on this appeal that his trial lawyer was constitutionally ineffective because he did not seek suppression of the DNA sample taken from him as a result of the court commissioner's order, arguing that the court commissioner issued the order without first requiring that supporting evidence be under oath. He also claims that his trial lawyer was constitutionally ineffective because he did not object to an officer's testimony that Enesha D. tentatively identified Ward as her attacker from an array of photographs. Finally, he claims the trial court violated his Sixth Amendment right to present a defense when: (1) it did not allow him to tell the jury that Dorothy S. said he did not rape her even though his DNA matched that of her attacker; and (2) it also did not allow Ward to tell the jury that the DNA from Ms. D.'s leg did not match what the State crime laboratory listed as Ward's DNA in the convicted-felon DNA data bank. We analyze these matters in turn.

## II.

A. *Alleged ineffective assistance of counsel.*

¶ 8. To establish constitutionally ineffective assistance by his or her lawyer, a defendant must show:

---

[2] Dorothy S. testified that she was sleeping on the morning of the attack, and awoke when she "heard something moving." She said that she "raised up" and "looked" but "didn't see anything because I guess he had hid in the kitchen." "So I laid on my stomach, and that is when the person, you know, jumped me, you know. He jumped over my back." She testified that her attacker had a bag over his head, but "it kept coming off." She said that she saw the "side of his face" and "the color of his skin and his hair."

(1) deficient representation; and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient representation, a defendant must point to specific acts or omissions by the lawyer that are "outside the wide range of professionally competent assistance." *Id.*, 466 U.S. at 690. To prove prejudice, a defendant must demonstrate that the lawyer's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. *Id.*, 466 U.S. at 687. Thus, in order to succeed on the prejudice aspect of the *Strickland* analysis, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694. This is not, however, "an outcome-determinative test. In decisions following Strickland, the [United States] Supreme Court has reaffirmed that the touchstone of the prejudice component is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.' " *State v. Smith*, 207 Wis. 2d 258, 276, 558 N.W.2d 379, 386 (1997) (citations and quoted source omitted).

¶ 9. Further, we need not address both aspects of the *Strickland* test if the defendant does not make a sufficient showing on either one. *See Strickland*, 466 U.S. at 697. Finally, our review of an ineffective-assistance-of-counsel claim presents mixed questions of law and fact. *See State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845, 848 (1990). A circuit court's findings of fact will not be disturbed unless they are clearly erroneous. *Ibid.* Its legal conclusions as to whether the lawyer's performance was deficient and, if so, prejudi-

cial, are questions of law that we review *de novo. Id.*, 153 Wis. 2d at 128, 449 N.W.2d at 848. Finally, a defendant is not entitled to an evidentiary hearing on his or her claims of ineffective assistance of counsel unless matters that he or she contends are true would warrant relief. *State v. Bentley*, 201 Wis. 2d 303, 309–310, 548 N.W.2d 50, 53 (1996).

1. *Court-commissioner order directing that Ward give a sample of his DNA.*

¶ 10. Unless a person consents to giving a sample of his or her DNA, or there are exigent circumstances, or there are other exceptions that are not material here, a DNA sample may only be collected by a search warrant supported by probable cause. *See State v. Banks*, 2010 WI App 107, ¶ 18, 328 Wis. 2d 766, 778–779, 790 N.W.2d 526, 532.[3] Ward refused to give his consent, and the State does not argue that exigent circumstances excused the warrant requirement. As Ward argues, however, and as the State concedes, a search warrant must be supported by "oath or affirmation"; if not, the warrant is void. *See State v. Tye*, 2001 WI 124, ¶ 13, 248 Wis. 2d 530, 538, 636 N.W.2d 473, 477. The court commissioner here merely acceded to the State's request, and directed Ward to give a DNA sample without first requiring supporting evidence be under oath. Thus, the court commissioner's July, 2005, order was invalid, and Ward's DNA sample taken under that order could have been suppressed. *See Segura v.*

---

[3] Effective May 22, 2010, a formal search warrant may not be necessary, an issue we need not decide, if the person from whom a DNA sample is taken meets certain criteria. *See* WIS. STAT. § 165.76 (2009–2010); 2009 Wis. Act 261.

*United States*, 468 U.S. 796, 804 (1984) ("Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion.").

■

¶ 11. But that does not end our analysis because even assuming that Ward's trial lawyer should have sought suppression of Ward's compelled DNA sample, the State could have easily cured the matter by submitting an affidavit that recited: (1) the assaults on Ms. D., and (2) that Ward's fingerprints were found in her home even though, as she testified at the trial, she did not know Ward and that to the best of her knowledge Ward had never been in her home during the six or so months she lived there. This would have more than supported a lawful warrant for a sample of Ward's DNA. *See State v. Kerr*, 181 Wis. 2d 372, 378, 511 N.W.2d 586, 588 (1994) (Search warrant sufficient if the issuing magistrate is " 'apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that they will be found in the place to be searched.' ") (quoted source omitted). Accordingly, Ward has not shown prejudice under *Strickland* or that his trial lawyer was constitutionally deficient because a lawyer need not do things that accomplish nothing. *See State v. Byrge*, 225 Wis. 2d 702, 724, 594 N.W.2d 388, 397 (Ct. App. 1999) ("A defendant who alleges that counsel was ineffective by failing to take certain steps must show with specificity what the actions, if taken, would have revealed and how they would have altered the outcome of the proceeding."), *aff'd*, 2000 WI 101, 237 Wis. 2d 197, 614 N.W.2d 477; *Williams v. Chrans*, 894 F.2d 928, 935–936 (7th Cir.

665

1990) (no *Strickland* prejudice when error "would have been cured" by court's response to timely objection). [4]

### 2. *Hearsay testimony by a police officer.*

¶ 12. Ward also contends that his lawyer should have objected at the trial to the following as inadmissible hearsay about what Ms. D. did when shown an array of photographs in an attempt to see if she could pick out the person who assaulted her:

---

[4] Ward argues in his reply brief that "equitable estoppel" and "judicial estoppel" prevent the State "from arguing that even if the DNA sample and profile were suppressed, a valid search warrant based on oath and [*sic*] affirmation could have been obtained." We disagree.

First, "equitable estoppel" does not run against the State in criminal cases. *See State v. Drown*, 2011 WI App 53, ¶ 10, 332 Wis. 2d 765, 773, 797 N.W.2d 919, 922–923.

Second, "judicial estoppel" "is intended 'to protect against a litigant playing " 'fast and loose with the courts' " by asserting inconsistent positions.' " *State v. Petty*, 201 Wis. 2d 337, 347, 548 N.W.2d 817, 820 (1996) (citations omitted). Although discretionary, whether there are requisite elements that permit a court's invocation of judicial estoppel is an issue of law. *Id.*, 201 Wis. 2d at 346–347, 548 N.W.2d at 820. There are two requisite elements: (1) the party against whom judicial estoppel is sought to be invoked must have argued two "irreconcilably inconsistent positions"; and that party must have "intentionally manipulated the judicial system." *Id.*, 201 Wis. 2d at 353, 548 N.W.2d at 823. Ward contends that we should apply judicial estoppel against the State because the State told the court commissioner that it wanted to "confirm" Ward's exclusion as the man who left semen on Ms. D. At best, this is a silly argument. As we have seen, the State told the court commissioner that it was "theoretically possible that there was an error made in the entry into the data bank." Judicial estoppel is not applicable.

THE WITNESS: She looked at the photo array for a couple of minutes, and she put an initial by No. 3 and No. 6.

Ward was "No. 6."

Q. Okay. And did Miss D[.] indicate anything else to you?

A. She indicated that the subject looked familiar, but she didn't know where.

¶ 13. On cross-examination, the officer said "[y]es" in response to this question by Ward's lawyer: "And she said that No. 3 and No. 6 looked familiar to her, right?" During her testimony, Ms. D. said she did not remember being shown an array of photographs.

¶ 14. Under WIS. STAT. RULE 908.01(1)(b) & (3), out-of-court non-verbal conduct by a person is hearsay if the person intends that conduct to be "an assertion." Hearsay is generally not admissible. WIS. STAT. RULE 908.02. Assuming but not deciding that Ward's lawyer could have successfully objected to those of Ms. D.'s assertions that Ward contends were hearsay, Ward has not shown prejudice. At best, the error, if error, was *de minimis,* and, in light of the fingerprint and DNA evidence, receipt of the officer's testimony does not "undermine [our] confidence in the outcome" of his trial. *See Strickland,* 466 U.S. at 694.

3. *Right to present a defense.*

██ ██

¶ 15. Ward also complains that the trial court deprived him of his Sixth Amendment right to present a defense by excluding evidence that Dorothy S. said that Ward was not the man who raped her even though his DNA matched that of her rapist, and, also, that the

667

initial check of the DNA recovered from Ms. D.'s leg did not match what the State crime laboratory listed as Ward's DNA in the convicted-felon DNA data bank. Although a trial court's admission or exclusion of evidence is within its reasoned discretion, *State v. Sullivan*, 216 Wis. 2d 768, 780, 576 N.W.2d 30, 36 (1998), we analyze *de novo* whether a trial court's exclusion of evidence deprived a defendant in a criminal case of his or her right to present a defense, *see State v. Munford*, 2010 WI App 168, ¶ 28, 330 Wis. 2d 575, 588, 794 N.W.2d 264, 270 ("Whether an evidentiary ruling infringes upon a criminal defendant's right to present a defense is a question of constitutional fact for independent review.").

¶ 16. Every defendant in a criminal case has the right under the Sixth Amendment to present his or her defense. *Washington v. Texas*, 388 U.S. 14, 18–19 (1967). The evidence the defendant seeks to introduce, however, must be "both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). This is where Ward's contention breaks down: simply put, Dorothy S.'s inability to identify Ward as her attacker despite the presence of his DNA is not "material" to the issue before Ward's jury—whether Ward assaulted Enesha D. Stated another way, Dorothy S.'s inability to identify Ward does not make it less likely that Ward assaulted Ms. D. because it has no bearing on whether Ward left his DNA on Ms. D.'s leg. *See* Wis. Stat. Rule 904.01 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). By the same token, the initial non-match of the DNA recovered from Ms. D.'s leg with the DNA profile that the convicted-felon data bank mistakenly

listed for Ward also does not make more or less probable that the ultimate match, which, significantly, Ward does not challenge, was correct. The trial court did not err in preventing Ward from confusing the jury with evidence that was simply not material to whether he was guilty or not guilty of raping Ms. D. *See* WIS. STAT. RULE 904.03 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). Here, of course, as noted, the evidence excluded by the trial court was not relevant as that term is used by WIS. STAT. RULE 904.01, so, technically, the balancing required by RULE 904.03 does not even apply.

¶ 17. We affirm.

*By the Court.*—Judgment and order affirmed.