COURT OF APPEALS
DECISION
DATED AND FILED

April 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

Appeal No. **2019AP307-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2015CF2525**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

MELVIN WILSON, JR.,

    DEFENDANT-APPELLANT.

        APPEAL from a judgment and an order of the circuit court for Dane County: CLAYTON PATRICK KAWSKI and JILL KAROFSKY, Judges. *Affirmed*.

        Before Blanchard, Graham and Nashold, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Melvin Wilson, Jr., appeals a judgment convicting him of one count of operating a motor vehicle while intoxicated as a seventh offense and one count of hit and run.  Wilson also appeals the circuit court's order denying his motion for postconviction relief.[1]  The charges against Wilson arose out of an automobile accident in which an SUV crashed head-on into the victim's vehicle. The SUV driver walked away from the scene, but the victim later identified Wilson as the driver.  Wilson argues that his counsel was ineffective at trial for failing to (1) challenge police officers' testimony that Wilson "matched" the victim's description of the driver, (2) object to the prosecutor's assertion that an officer testified that Wilson was wearing a baseball cap, and (3) present statements Wilson made to police regarding an alternative suspect.  We conclude that, even if counsel performed deficiently in these respects, Wilson fails to show prejudice.  We therefore affirm.

### *Background*

¶2    The victim testified that the accident occurred at about 5:30 p.m., around dusk.  He was driving in Madison on a two-lane frontage road when an SUV came out of nowhere, heading straight for him in his lane, resulting in a head-on collision.  The victim exited his vehicle and approached the SUV driver's side door. While standing two feet from the driver's side door, the victim observed the driver from the front through the window.  There was no one else in the SUV.  Even though it was dusk, the victim had a clear view of the driver based on the lighting from a

---

[1] The Honorable Clayton Patrick Kawski presided over the trial proceedings and entered the judgment of conviction.  The Honorable Jill Karofsky entered the order denying Wilson's motion for postconviction relief.

nearby store and the headlights from other cars. The victim testified that the driver was wearing a baseball cap.

¶3 As the driver attempted to restart the SUV, the victim asked the driver what was wrong with him. The driver mumbled as he exited the SUV, and then walked away. Based on the victim's observations of the driver, the victim assumed that the driver was intoxicated. The victim estimated that he had stood by the SUV for about 15 to 30 seconds.

¶4 The victim identified Wilson in court as the driver. The victim testified that he "recognized" Wilson as the driver a few days after the accident when he saw an on-line news article that showed Wilson's booking photo. Additionally, the victim testified that he vaguely remembered that police brought Wilson back to the accident scene and that he identified Wilson at the scene, but that he "could have been mistaken" about Wilson being brought back to the scene because there was a "lot going on that night."

¶5 A police officer named Mawhinney who responded to the accident testified. Officer Mawhinney determined that the SUV was registered to "M Wilson Construction Company" with an address on Balsam Road. Mawhinney observed a liquor bottle in the SUV. According to Mawhinney, the victim described the driver as a "male black, in his 60s, with white gray facial hair, a lighter colored ball cap and a tan Carhartt coat." The victim also provided Mawhinney with the SUV driver's direction of travel on foot from the scene.

¶6 Officer Mawhinney relayed the victim's description and the driver's direction of travel to other officers. After he learned that other officers had stopped the suspected driver less than a mile from the accident scene, Mawhinney went to

that area. When asked at trial if the suspect, who was Wilson, was a "match" for the victim's description of the SUV driver, Mawhinney testified that he was.

¶7     An officer named Misener, who was the officer who stopped Wilson, also testified. Misener was dispatched at 5:43 p.m. and was informed that the suspect was described as a "black male, approximately 60 years old wearing a tan coat." After learning the suspect's direction of travel, she began searching the area between the accident scene and Balsam Road. She testified that she saw a suspect "matching" the description she had received.[2] The suspect was walking less than one mile from the accident scene, stumbling along a sidewalk. According to Misener, the weather was extremely cold, and she saw almost nobody else out walking.

¶8     Officer Misener observed that Wilson had difficulty walking, bloodshot eyes, and slurred speech. At one point, Wilson walked ten feet away from her, unzipped his pants, and started urinating on the ground. Based on her observations and on Wilson's poor performance on field sobriety tests, Misener determined that Wilson was intoxicated and impaired by alcohol. An intoximeter test showed that Wilson had a 0.20 breath alcohol concentration. Misener testified that Wilson was not transported back to the accident scene.

¶9     During closing arguments, the prosecutor repeatedly referenced the police officers' testimony that Wilson "matched" the victim's description of the SUV driver. Additionally, although Officer Misener did not testify that Wilson was

---

[2] Similarly, Officer Misener agreed during her redirect examination that Wilson "match[ed]" the description.

wearing a baseball cap, the prosecutor asserted that Misener testified that Wilson was wearing one.[3]

¶10    Wilson's counsel challenged the victim's identification of Wilson. He argued that there were several factors that undercut the identification, including the dark conditions as shown on a police squad video of the accident scene and the suggestive nature of Wilson's booking photo that the victim saw in the news. Counsel highlighted the victim's apparent inability to accurately recall events surrounding the accident, including whether the police brought Wilson back to the scene.

¶11    After conviction and sentencing, Wilson filed a motion for postconviction relief claiming ineffective assistance of counsel. The circuit court held a *Machner*[4] hearing and denied the motion. The court concluded that Wilson failed to show that his trial counsel performed deficiently.

### Discussion

¶12    To demonstrate ineffective assistance of counsel, a defendant must establish both (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687

---

[3] The prosecutor's assertion is arguably ambiguous on this point. The assertion reads as follows in the transcript: "Officer Misener talked about how it was cold and nobody was out and about walking around, yet the defendant was out there in very cold weather walking around with a baseball cap and a coat on, just a light coat." It is unclear whether the prosecutor meant to convey that Officer Misener's testimony included the statements about the baseball cap and coat. Regardless, we will assume, as Wilson argues, that the prosecutor's assertion would have been interpreted as claiming that Misener testified that Wilson was wearing a baseball cap.

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

(1984). The court need not address both components of the inquiry if the defendant makes an insufficient showing on one. *Id.* at 697.

¶13 "[O]ur review of an ineffective-assistance-of-counsel claim presents mixed questions of law and fact." *State v. Ward*, 2011 WI App 151, ¶9, 337 Wis. 2d 655, 807 N.W.2d 23. "A circuit court's findings of fact will not be disturbed unless they are clearly erroneous." *Id.* "Its legal conclusions as to whether the lawyer's performance was deficient and, if so, prejudicial, are questions of law that we review *de novo*." *Id.*

¶14 Here, our analysis does not depend on any disputed factual findings, and we need not decide whether counsel performed deficiently. Rather, we resolve this case based on the prejudice component of the test for ineffective assistance of counsel.

¶15 To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome ...." *Id.* at 693. "When a defendant alleges multiple deficiencies by trial counsel, prejudice should be assessed based on the cumulative effect of these deficiencies." *State v. Zimmerman*, 2003 WI App 196, ¶34, 266 Wis. 2d 1003, 669 N.W.2d 762.

¶16 Wilson claims that his trial counsel was ineffective in three respects. First, Wilson contends that counsel should have challenged the police officers' testimony that Wilson "matched" the victim's description of the SUV driver. Wilson asserts that, while the victim described the driver as wearing a heavier type

coat that was tan in color and a baseball cap, there was evidence that police found Wilson wearing a light coat or sweatshirt that was gray in color, and police did not testify that Wilson was wearing a baseball cap. Second, Wilson contends that counsel should have objected to the prosecutor's assertion during closing arguments that Officer Misener testified that Wilson was wearing a baseball cap. Third, Wilson contends that counsel should have presented statements Wilson made to police at the time of his arrest regarding an alternative suspect. Wilson argues that these errors by counsel prejudiced his defense.

¶17 We conclude that, even if counsel performed deficiently in each of the ways that Wilson claims, Wilson fails to show prejudice based on the individual or cumulative effect of counsel's claimed errors. In other words, we conclude that there is not a reasonable probability that, but for the claimed deficient performance, the result of the trial would have been different.

¶18 The evidence that Wilson was the driver of the SUV was strong. To summarize that evidence: The victim testified about the conditions that gave him a good opportunity to observe the driver. He said he stood by the SUV for about 15 to 30 seconds, was about two feet from the driver's side window, and observed the driver from the front. He said that, despite the dusk conditions, nearby lighting sources allowed a clear view of the driver. The victim saw the SUV driver walk away from the scene. He did not see anyone else in the SUV. The circumstances of the accident, the victim's observations, and the presence of a liquor bottle in the SUV all indicated that the driver was intoxicated. The SUV was registered to a company bearing Wilson's name at an address on Balsam Road. When a police officer searched the area between the accident scene and Balsam Road shortly after the accident, she found Wilson walking less than a mile from the scene. It was

7

extremely cold and almost no one else was out walking. Wilson was intoxicated. This is collectively strong evidence that Wilson was the driver.

¶19 Given the evidence against Wilson, we are not persuaded that Wilson was prejudiced by counsel's failure to challenge the police officers' testimony that Wilson "matched" the victim's description of the SUV driver. To be sure, there were weaknesses in the victim's identification of Wilson, but counsel exploited the most significant weaknesses. Had counsel also challenged the officers' "matched" testimony, he may have been able to highlight potential conflicts in the evidence as to the type of coat the SUV driver/Wilson was wearing, whether the coat was tan or gray, or whether the SUV driver/Wilson was wearing a baseball cap. However, these potential conflicts could have been downplayed as minor, and they were not likely to have had a significant impact on the overall strength of the State's evidence. The type of coat might be difficult to assess; a gray coat could easily be mistaken for a tan coat, especially in dusky or dark conditions; Wilson could have easily removed a coat or a baseball cap after leaving the accident scene in order to avoid detection.

¶20 These potential conflicts in the evidence as to the SUV driver/Wilson's attire would not have undercut the powerful circumstantial evidence against Wilson that did not depend on the victim's identification. That evidence included the location where Wilson was stopped by police, the absence of other suspects walking about on an extremely cold day, the SUV registration bearing Wilson's name, and Wilson's intoxication.

¶21 For similar reasons, we reject Wilson's contention that he was prejudiced by counsel's failure to object to the prosecutor's assertion during closing arguments that Officer Misener testified Wilson was wearing a baseball cap. At

most, an objection to this assertion would have clarified that, contrary to the victim's description, Wilson was not wearing an item that he could have easily removed before the police located him.

¶22    We turn to Wilson's third and final claim, that counsel was ineffective for failing to present Wilson's statements to police at the time of his arrest regarding an alternative suspect. In arguing that he was prejudiced, Wilson points out that his statements included: denying involvement in a crash, informing the police that a friend named Ray had stolen his vehicle, and describing Ray as a black male (the same race and gender as Wilson). Wilson argues that counsel's failure to present his statements was the most damaging of counsel's errors. He contends that, without these statements, there was a "logical hole in the defense—how could anyone other than Wilson have been driving his truck?"

¶23    We conclude that Wilson did not meet his burden of showing that his counsel's failure to present the statements was prejudicial. When considered in their full context, the statements that Wilson made to the police contained significant inconsistencies and suspicious claims. Wilson first told police that his vehicle had been stolen from an area that was nine miles from the location where police stopped him, and that he had walked from that area. However, when questioned further, Wilson claimed that his vehicle had been stolen from a nearby liquor store, and that he had walked from that location. In describing how his friend Ray stole the vehicle, Wilson stated that he had exited the vehicle to enter the liquor store, that the liquor store was closed, and that when he turned around the vehicle was gone. However, the police were aware that the liquor store was open. Finally, although Wilson claimed that Ray was a friend, Wilson also claimed that he did not know Ray's last name, address, or phone number; could not say how he had originally come into

9

contact with Ray; and could not provide any other information as to Ray's identity or whereabouts.

¶24 Considering Wilson's statements as a whole, we are not persuaded that they were likely to bolster his defense. Rather, they were much more likely to damage his defense by suggesting that he lied to police about his vehicle being stolen in an attempt to avoid responsibility.

¶25 Wilson points out that his statements to the police were introduced at a previous trial in which the jury deadlocked.[5] He asserts that the absence of the statements at retrial here was the only material difference in the evidence between the two trials. Wilson argues, as we understand it, that the different outcomes at each trial shows that counsel's failure to present the statements at retrial was prejudicial. We disagree. The implied premise of Wilson's argument—that his statements were the cause of the jury's deadlock at his first trial—is speculative. Further, given the overall content of the statements, the deadlock at Wilson's first trial does not undermine our confidence in the outcome here.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

---

[5] The statements were admitted at Wilson's previous trial in response to a jury question.