COURT OF APPEALS
DECISION
DATED AND FILED

January 20, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2021AP1807-CR**

Cir. Ct. No. **2019CF139**

STATE OF WISCONSIN

**IN COURT OF APPEALS
DISTRICT IV**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

TONY A. WILD,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Grant County:  CRAIG R. DAY, Judge.  *Affirmed*.

Before Kloppenburg, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Tony Wild appeals a judgment of conviction for first-degree sexual assault of a child and an order denying his motion for

postconviction relief. Wild contends that trial counsel was ineffective by (1) failing to request a *Daubert*[1] hearing to test the admissibility of expert testimony by a forensic interviewer who interviewed the victim, (2) failing to object to the interviewer's expert testimony at trial, (3) bolstering the interviewer's credibility on cross-examination, and (4) failing to impeach the victim with evidence of the victim's shoplifting. We conclude that Wild fails to establish that counsel performed deficiently in any of these respects. Accordingly, we affirm.

¶2      The sexual assault charge against Wild was based on allegations that he had sexual contact with A.B., a child under the age of thirteen.[2] According to the complaint allegations, Wild reached his hand into A.B.'s pants and rubbed her "private part" while A.B. was sleeping. A jury found Wild guilty. After being sentenced, Wild filed a postconviction motion claiming that he received ineffective assistance of counsel at trial. The circuit court held a *Machner*[3] hearing at which trial counsel testified. The court denied Wild's motion.

¶3      To demonstrate ineffective assistance of counsel, a defendant must establish both (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[O]ur review of an ineffective-assistance-of-counsel claim presents mixed questions of law and fact." *State v. Ward*, 2011 WI App 151, ¶9, 337 Wis. 2d 655, 807 N.W.2d 23. "A circuit court's findings of fact will not be disturbed unless they are clearly erroneous." *Id.* "Its legal conclusions as to whether

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[2] We use the initials A.B. to protect the victim's privacy. *See* WIS. STAT. RULE 809.86 (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[3] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

the lawyer's performance was deficient and, if so, prejudicial, are questions of law that we review *de novo*." *Id.*

¶4      We need not address both prongs of this test for ineffective assistance if the defendant makes an insufficient showing on one prong. *See Strickland*, 466 U.S. at 697. Here, because we conclude Wild fails to show that counsel performed deficiently, we do not address prejudice.

¶5      To establish deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoted source omitted).

¶6      Wild first contends that trial counsel performed deficiently by failing to request a *Daubert* hearing to test the admissibility of expert testimony by the forensic interviewer who interviewed A.B. The interviewer testified regarding her interview techniques, including how she asks non-leading questions in an attempt to gather information in a neutral manner. According to Wild, the interviewer's testimony relating to her specialized knowledge of forensic interviewing techniques was expert testimony. We will assume, without deciding, that this testimony was expert testimony.

¶7      Wild argues that, if counsel had requested a *Daubert* hearing, the circuit court would have been required to exercise its gatekeeping function to

determine whether the interviewer's expert testimony was admissible under *Daubert* standards. Wild argues that there was no reasonable strategic basis for counsel not to request a *Daubert* hearing.

¶8 We reject Wild's argument that counsel performed deficiently by failing to request a *Daubert* hearing because Wild does not explain why some or all of the interviewer's expert testimony would have been inadmissible under the *Daubert* standards. Absent such an explanation, Wild has not established that a *Daubert* hearing would have resulted in the exclusion of any of that testimony. Wild therefore has also not established that counsel performed deficiently by failing to request a *Daubert* hearing. *See State v. Pico*, 2018 WI 66, ¶28, 382 Wis. 2d 273, 914 N.W.2d 95 ("[A]n attorney does not perform deficiently when [the attorney] chooses not to pursue tactics that lack factual or legal support."); *State v. Maloney*, 2005 WI 74, ¶37, 281 Wis. 2d 595, 698 N.W.2d 583 ("Counsel does not render deficient performance for failing to bring a suppression motion that would have been denied.").

¶9 In his reply brief, Wild argues that the forensic interviewer's expert testimony was inadmissible because the testimony was not relevant and because one of the principles of *Daubert* is that the testimony must be relevant. Putting aside the fact that this argument comes too late, we reject the argument as lacking in merit. The testimony was relevant because it had a tendency to show that the interview of A.B. was reliable and that A.B.'s allegations as disclosed in the interview were thus likewise reliable. *See State v. Maday*, 2017 WI 28, ¶28, 374 Wis. 2d 164, 892 N.W.2d 611 ("The forensic interview techniques used today are accepted among experts and courts as effective tools for investigating child sexual assault allegations because these methods minimize the risk of false allegations of abuse that result from a child's vulnerability to suggestion and coaching.").

4

¶10    Wild next contends that counsel performed deficiently by failing to object to the forensic interviewer's expert testimony at trial. Wild argues that the testimony should have been excluded because the State failed to timely identify the forensic interviewer as an expert witness.[4]

¶11    We will assume, without deciding, that counsel could have successfully objected to the interviewer's expert testimony because the State failed to timely identify the interviewer as an expert witness. Even so, we conclude that counsel's failure to object on this ground was not deficient performance because counsel had a reasonable strategic basis for allowing the testimony to be admitted.

¶12    Counsel testified at the *Machner* hearing that she believed that the most damaging part of the State's case consisted of statements that Wild had made to a detective under coercive questioning. Counsel testified that she wanted to cast as much doubt on the detective's credibility as possible. To that end, counsel sought to focus on the detective's coercive interviewing techniques, and to juxtapose those coercive techniques with the neutral interview techniques that the forensic interviewer described.

¶13    The circuit court found that although counsel's strategy was "risky, perhaps," the strategy was reasonable given Wild's incriminating statements to the detective and the detective's interview techniques. The court reasoned that it was a good defense strategy to identify a witness for the jury to dislike more than the defendant and that, in this particular case, the detective was "a pretty good candidate

---

[4] Wild also argues that counsel could have objected to the interviewer's expert testimony at trial as inadmissible under the *Daubert* standards. However, as discussed in the text, Wild does not explain why some or all of the interviewer's expert testimony would have been inadmissible under the *Daubert* standards. Therefore, we conclude that Wild has not shown that counsel performed deficiently by failing to object on this ground at trial.

for that." The court found that the defense needed a way to minimize Wild's statements to the detective and to show that, "unlike [the forensic interviewer], who's trying to get to the truth, the [detective] is not because they employed two very different techniques." The court further found that the interviewer "being on the stand and having that information that [defense counsel] viewed as helpful to undermine the [detective]'s credibility was the best way, under the available options, to try to get that done."

¶14    Based on the circumstances of this case, counsel's testimony at the *Machner* hearing, and the circuit court's factual findings, we agree with the court that counsel's strategy was a reasonable one. Accordingly, we also agree with the court that counsel did not perform deficiently by failing to object to the forensic interviewer's expert testimony. *See State v. Sholar*, 2018 WI 53, ¶54, 381 Wis. 2d 560, 912 N.W.2d 89 ("If trial counsel testifies at the *Machner* hearing that the choice under attack was based on a trial strategy, which the circuit court finds reasonable, it is 'virtually unassailable' and the ineffective assistance claim fails." (quoted sources omitted)).

¶15    Wild argues that counsel's strategy was not reasonable because, although his statements to the detective were problematic for his defense, A.B.'s allegations in the forensic interview were worse. Wild argues that counsel's strategy ended up bolstering the forensic interviewer's credibility and, in turn, bolstering the credibility of A.B.'s allegations. We are not persuaded by this argument. Reasonable minds can differ as to which evidence was more damaging to the defense, and for that reason and the additional reasons already stated we conclude that counsel chose a reasonable defense strategy.

6

¶16     Wild also argues that counsel's strategy was not reasonable because counsel could have attacked the detective's coercive interview techniques with expert testimony on false confessions instead of attacking the detective's techniques by bolstering the forensic interviewer's credibility. We reject this argument because Wild has not identified an expert or explained with any specificity what testimony the expert would have provided. Without such information, Wild does not establish that a defense expert was an available or superior option that made counsel's choice of strategy unreasonable.

¶17     Wild next contends that counsel performed deficiently when cross-examining the forensic interviewer. Wild argues that counsel should have sought to chip away at the reliability of the interviewer's techniques but counsel instead did the opposite, using her cross-examination to bolster the interviewer's credibility. We reject this argument for the reasons already explained. Counsel's approach to cross-examining the interviewer was part of counsel's reasonable overall strategy.

¶18     Wild's final contention is that counsel performed deficiently by failing to impeach A.B. with A.B.'s history of shoplifting. Wild argues that A.B.'s credibility was obviously a key issue, and that evidence of her previous shoplifting could have undermined her credibility. Wild argues that this evidence would have been admissible as opinion or reputation evidence for character of untruthfulness or as "other acts" evidence. *See* WIS. STAT. §§ 904.04, 904.05, 906.08.

¶19     There are two reasons why we reject Wild's argument that counsel performed deficiently by failing to impeach A.B. with shoplifting evidence. First, Wild does not persuade us that the evidence would have been admissible under the theories that he advances.

¶20     Second, regardless of whether the evidence would have been admissible, we conclude that it was objectively reasonable for counsel to decline to attack A.B.'s credibility with evidence of shoplifting.  The theory of defense at trial did not depend on establishing that A.B. was intentionally lying or had a tendency to be dishonest.  Rather, counsel's strategy was to leave open the possibility that A.B. might have been dreaming or that she might have been mistaken, possibly because one or more adults had unintentionally planted the suggestion that an assault occurred.  Counsel testified at the *Machner* hearing that it is a "very common" trial strategy to avoid calling a child a liar.  Counsel also testified:  "I find that juries do not react well to attacks on children.  It's difficult to get a jury to believe a 10-year-old girl is a malicious liar.  It happens, but not often."  Any attempt to impeach A.B. with evidence of shoplifting carried the risk that the jury might view the defense negatively for using heavy-handed tactics against a young child victim.

¶21     In sum, for the reasons stated above, we conclude that Wild has not shown ineffective assistance of counsel because Wild has not established that counsel performed deficiently in any of the four ways alleged.  Accordingly, we affirm the judgment of conviction and the order denying Wild's motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

8