COURT OF APPEALS
DECISION
DATED AND FILED

February 2, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1672-CR**

Cir. Ct. No. **2018CF511**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

GARY C. MAYS, JR.,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dane County: JOHN D. HYLAND, Judge. *Affirmed*.

Before Kloppenburg, Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Gary Mays appeals a judgment of conviction for felony murder and an order denying his postconviction motion. Mays argues that

his two trial attorneys provided ineffective assistance of counsel by: (1) failing to object to a question and comment by the prosecutor asserting that Mays conspired with his attorneys to provide false testimony that fit the evidence; and (2) failing to withdraw so that they could be witnesses whose testimony could have rebutted the prosecutor's assertion. Mays also argues that the circuit court erred by admitting evidence of gang activity and that we should exercise our discretion to order a new trial in the interest of justice. We reject each of Mays's arguments, and we therefore affirm.

## *Background*

¶2 According to the criminal complaint, Mays and two co-actors, Joshua McInnis and Travon Jackson, planned an armed robbery of K.M. that resulted in the shooting death of K.M.'s boyfriend, J.P. Jackson arranged to buy marijuana from K.M. and directed her to an apartment building where Mays and McInnis were waiting. After K.M. and J.P. drove to the apartment building, Mays and McInnis came out of the building and entered K.M.'s vehicle. McInnis displayed a gun and demanded the marijuana. Mays allegedly told McInnis to turn on the gun's laser sight, grabbed J.P.'s pocket, and asked if there was anything inside. A fight ensued between J.P. and Mays and McInnis, and McInnis shot J.P.

¶3 Mays's case proceeded to trial. At a first trial, the jury was unable to reach a verdict, and the court declared a mistrial. At a second trial, the jury found Mays guilty of felony murder as party to the crime of attempted robbery. The testifying witnesses included K.M., McInnis, Jackson, and multiple police officers who had responded to the scene or had been involved in investigating the incident.

¶4 When McInnis testified, he largely refused to answer the prosecutor's questions. He repeatedly responded, "I got nothin' to say," and he

claimed that he did not know Mays and had never met Mays before. When Jackson testified, he admitted to setting up a drug deal with the intention of robbing K.M., but he claimed that the other two individuals involved in the plan to rob K.M. were someone named "Shawn" and someone else whose name he did not know.

¶5    The circuit court allowed the State to present evidence that Mays, McInnis, and Jackson were members of the same gang. The court also allowed the State to present expert testimony through a police officer describing gang structure and activities. The prosecution proffered the evidence to explain why McInnis and Jackson would lie in their testimony and refuse to implicate Mays. Mays objected to the admission of this gang-related evidence, arguing that its probative value was outweighed by the risk of unfair prejudice.

¶6    Mays testified in his defense. He admitted that he was involved with McInnis and Jackson in a drug deal and that he and McInnis entered K.M.'s vehicle to transact the deal. Mays also provided detailed testimony relating to the circumstances surrounding the incident. He denied that he was aware of any plan to rob K.M., that he was aware that McInnis had a gun, or that he participated in an attempt to rob K.M. or J.P.

¶7    In an effort to impeach Mays, the State argued that Mays made up a story to fit the evidence after he had reviewed the discovery in his case. As part of this effort, the prosecutor posed a question to Mays in which the prosecutor asked Mays whether Mays and his attorneys had "worked out some story that got you out of this":

> Q Isn't it true that you took all the pieces of this
> investigation, everything that the police did, all 600, 700
> pages of reports, 21 disks, half of which are your friends

and family confessing that you were involved in this robbery, you took all of those pieces of information and with your lawyers worked out some story that got you out of this?  Isn't that true?

A  No.

During closing arguments, the State returned to the same theme and made the following comment in its rebuttal argument:  "So does Gary Mays's story fit today?  Yeah.  I sure as hell expect it would, or his attorneys probably aren't doing their job."

¶8  After his conviction and sentencing, Mays filed a postconviction motion claiming ineffective assistance of counsel and seeking a new trial.  The circuit court held a *Machner*[1] hearing at which Mays's two trial attorneys testified.  The court denied Mays's motion.

¶9  We reference additional facts as needed in our discussion below.

## *Discussion*

### A.  *Ineffective Assistance of Counsel*

¶10  We begin with Mays's argument that trial counsel was ineffective by failing to object to the assertions that Mays conspired with his attorneys to provide false testimony and by failing to withdraw so that they could be witnesses whose testimony could have rebutted the prosecutor's assertion.  To demonstrate ineffective assistance of counsel, a defendant must establish both (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  We need not

[1] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

address both prongs of this test if the defendant makes an insufficient showing on one prong. *See id.* at 697.

¶11 To establish deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

¶12 To establish prejudice, the defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

¶13 "[O]ur review of an ineffective-assistance-of-counsel claim presents mixed questions of law and fact." *State v. Ward*, 2011 WI App 151, ¶9, 337 Wis. 2d 655, 807 N.W.2d 23. "A circuit court's findings of fact will not be disturbed unless they are clearly erroneous." *Id.* "Its legal conclusions as to whether the lawyer's performance was deficient and, if so, prejudicial, are questions of law that we review *de novo*." *Id.*

¶14 Here, Mays does not develop an argument that the circuit court made erroneous factual findings. He does, however, contend that the court erred in its legal conclusions relating to whether trial counsel was ineffective, both in failing to object and in failing to withdraw. We address each in turn.

### *1. Counsel's Failure to Object*

¶15     Mays first argues that trial counsel provided ineffective assistance by failing to object to the prosecutor's question and comment in closing argument in which the prosecutor asserted that Mays conspired with counsel to provide false testimony.  He argues that the prosecutor's assertion was not supported by any evidence and was improper argument, and that counsel's failure to object to this assertion was objectively unreasonable.  Mays argues that the prosecutor's assertion, if true, would have involved multiple ethical violations by counsel, was highly prejudicial, and could not help but affect the fundamental fairness of his trial.

¶16     The State contends that counsel's failure to object to the prosecutor's question and comment was not deficient performance.  The State bases this argument primarily on its disagreement with Mays over the characterization of the prosecutor's question and comment.  According to the State, the question and comment are not reasonably read, in context, as asserting misconduct by counsel. The State also argues that, even if counsel performed deficiently by failing to object to the prosecutor's question and comment, Mays cannot show prejudice given all of the incriminating evidence against Mays.

¶17     We conclude that Mays fails to show that he was prejudiced by the prosecutor's question and comment.  Given the substantial evidence against Mays, we are confident that the result would have been the same even if counsel had made a successful objection.  We now summarize some of the most pertinent evidence.

¶18     First, K.M.'s testimony implicated Mays as a knowing participant in the attempted robbery.  For example, K.M. testified that, as McInnis pulled a gun

and demanded the marijuana, Mays told McInnis to "turn the beam on it," after which McInnis pointed a laser sight at J.P.'s head. K.M. also testified that, after J.P. exited the vehicle, Mays and McInnis both exited the vehicle and began "stomping" J.P. while he was on the ground.

¶19 Second, within a short time after the incident, K.M., McInnis, and Jackson all provided largely consistent statements to police that implicated Mays. Those statements, when contrasted with Mays's testimony, were powerful evidence that Mays was lying when he denied any involvement in an attempt to rob K.M. As the circuit court explained:

> The problem for Mays is that all of the other witnesses made statements that were nearly identical, and made them within days of the crime. They lacked the opportunity to compare notes or line up stories. From the Court's viewpoint, it is less that Mays had access to all the discovery and could shape a story to fit the evidence. It is more that three others essentially told the same story and they told it independent of each other and within days of the event. That was the strength of the State's case.

¶20 Third, there was additional evidence to corroborate K.M.'s, Jackson's, and McInnis's statements incriminating Mays. For example, police found a gun with a laser sight in Mays's home near his personal documents, and the color of the laser sight matched K.M.'s description of the laser as green. There was also evidence that, shortly after the incident, Jackson sent Mays text messages, including a message telling Mays to "play dumb" if arrested.

¶21 Fourth, the jury heard evidence that McInnis had previously testified against Mays. This included testimony by McInnis that McInnis had shown Mays the gun ahead of time, that they never intended to pay K.M. for the marijuana, and that Mays had "patted" J.P.'s pockets to try to obtain money from J.P.

¶22 Finally, the jury was shown a Facebook Live video that Mays had streamed from counsel's office—apparently without counsel's knowledge—as Mays watched McInnis's and Jackson's videotaped confessions implicating Mays. In the Facebook Live video, Mays can be seen providing real time commentary on their confessions, sometimes mocking them or laughing. At one point in the video, Mays comments that McInnis was "spilling the beans." The Facebook Live video further undermined Mays's credibility in the eyes of the jury. As the circuit court found in its postconviction ruling, the video was a "self-inflicted wound to [Mays's] defense."

¶23 In sum, the jury heard ample evidence pointing to Mays's guilt, and it had ample reason to doubt Mays's credibility, regardless of any assertion by the prosecutor that Mays conspired with counsel to fabricate false testimony. Accordingly, we are not persuaded by Mays's argument that he was prejudiced by such an assertion.

*2. Counsel's Failure to Withdraw*

¶24 Mays next argues that trial counsel provided ineffective assistance by failing to withdraw so that they could be witnesses whose testimony could have rebutted the prosecutor's assertion that Mays conspired with counsel to provide false testimony. Mays points out that one of his attorneys testified at the ***Machner*** hearing that Mays's trial testimony consisted of the same story that Mays had been telling counsel from the time counsel first started representing him. Mays argues that the only way to buttress his testimony was for counsel to testify and that, without counsel's testimony, he was prejudiced.

¶25 The State argues that counsel's failure to withdraw was neither deficient performance nor prejudicial. As to deficient performance, the State

8

argues that Mays fails to show that counsel's failure to withdraw fell outside the wide range of competent assistance. Rather, the State argues, counsel's failure to withdraw to testify as witnesses fell within prevailing professional norms. *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). As to prejudice, the State argues that testimony from counsel was not reasonably likely to have produced a different result.

¶26 We agree with the State that Mays has not shown that counsel performed deficiently by failing to withdraw. We are not persuaded by Mays's argument to the contrary for two main reasons.

¶27 First, Mays points to no settled law supporting the view that it is objectively unreasonable for a defense attorney to decline to withdraw when the attorney could testify to information that could rebut the State's case. "In order to constitute deficient performance, the law must be settled in the area in which trial counsel was allegedly ineffective." *State v. Hanson*, 2019 WI 63, ¶28, 387 Wis. 2d 233, 928 N.W.2d 607. Mays relies on *State v. Foy*, 206 Wis. 2d 629, 557 N.W.2d 494 (Ct. App. 1996), to argue that counsel should have withdrawn so that counsel could testify. In *Foy*, this court concluded that there is not an absolute prohibition on counsel testifying in a client's case and that the circuit court has discretion to allow counsel's testimony "when justice requires." *Id.* at 643-44. However, the court in *Foy* did not address whether or under what circumstances

counsel performs deficiently by failing to withdraw to testify on the client's behalf.[2]

¶28    Second, counsel's testimony at the ***Machner*** hearing supports the conclusion that counsel acted within prevailing professional norms by *not* withdrawing to testify on Mays's behalf. Although one of Mays's attorneys testified that she eventually came to believe that she should have withdrawn to be a witness, that same attorney also testified that, during her thirty-four years with the public defender's office, she was not aware of any instance in which a defense attorney had withdrawn from a case to testify. Mays's other attorney similarly testified that he was not aware of any instance in which a defense attorney had withdrawn to testify at a client's trial.

### B.  Evidence of Gang Activity

¶29    Mays next argues that the circuit court erroneously exercised its discretion by admitting evidence of gang activity. According to Mays, the circuit court should have excluded the evidence of gang activity because its probative value was substantially outweighed by the risk of unfair prejudice. Under WIS. STAT. § 904.03,[3] relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the

---

[2] The circuit court made several factual findings in support of its legal conclusion that Mays's counsel did not perform deficiently by failing to withdraw under the circumstances of this case. The court's findings included that Mays "was better served by having two attorneys who had tried the case once already," and that the jury had "no perceivable reason not to trust [Mays's] attorneys because they acquitted themselves professionally and with exceeding competence during the trial." Mays does not demonstrate that these findings are clearly erroneous.

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Sec. 904.03.

¶30    As mentioned above, the gang-related evidence included evidence that Mays, McInnis, and Jackson were members of the same gang. It also included expert testimony describing gang structure and activities. The prosecution used the evidence to explain why McInnis and Jackson would lie in their testimony and refuse to implicate Mays.

¶31    Mays does not dispute that evidence of a witness's gang affiliation may be admitted to demonstrate bias or motive to lie. *See State v. Long*, 2002 WI App 114, ¶17, 255 Wis. 2d 729, 647 N.W.2d 884. He argues, however, that such evidence generally carries a high risk of unfair prejudice. "[E]vidence of a person's gang ties may imply that the person is of questionable character and perhaps that the person has engaged in prior bad acts, if not criminal conduct." *Id.* Mays contends that the probative value of the gang-related evidence in this case was low because the robbery of K.M. was not gang-related and because the evidence was unnecessary for the State to show that McInnis and Jackson had a motive to lie. Mays argues that the low probative value of the evidence was far outweighed by the risk of prejudice. He argues that the prosecution used the evidence to appeal to the jury's emotions by portraying Mays, McInnis, and Jackson as bad actors to be feared, and that the evidence pervaded the trial.

¶32    The State argues that the circuit court reasonably exercised its discretion to admit the gang-related evidence. In the alternative, the State argues that any error in admitting the evidence was harmless. For the reasons that follow,

we agree with the State that the court reasonably exercised its discretion to admit the evidence.[4]

¶33    Circuit courts have broad discretion to decide whether the probative value of evidence is or is not outweighed by the risk of unfair prejudice. *Nowatske v. Osterloh*, 201 Wis. 2d 497, 503, 549 N.W.2d 256 (Ct. App. 1996). We will uphold the court's exercise of discretion "unless it can be said that no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion." *State v. Jeske*, 197 Wis. 2d 905, 913, 541 N.W.2d 225 (Ct. App. 1995).

¶34    Here, we agree with the State that the circuit court could reasonably conclude that the gang-related evidence was highly probative insofar as it helped explain McInnis's and Jackson's trial testimony. As the State asserts, the gang-related evidence was "highly probative in making sense of McInnis's and Jackson's bizarre trial testimony, especially in contrast with their earlier statements to police" in which they had implicated Mays.

¶35    The circuit court could also reasonably conclude that the risk of unfair prejudice posed by the gang-related evidence was relatively low because other evidence already reflected poorly on Mays's, Jackson's, and McInnis's

---

[4] We note that the State's harmless error argument contradicts at least part of the State's argument that the circuit court reasonably exercised its discretion. In its harmless error argument, the State contends that, even without the gang-related evidence, no reasonable jury would have believed McInnis's and Jackson's incredible attempts to recant their accusations against Mays. However, as we discuss in the text, the State also argues that the court reasonably admitted the gang-related evidence because the evidence was "highly probative" in explaining why McInnis and Jackson would recant. In other words, the State's harmless error argument attributes little value to the gang-related evidence while the State's argument that the court reasonably admitted the evidence attributes significant value to the same evidence.

characters and highlighted their prior bad acts.[5] This included evidence that Mays, McInnis, and Jackson had previously committed so many robberies that others had stopped agreeing to sell them marijuana. Mays also admitted that he had a prior conviction. Finally, as previously noted, the Facebook Live video reflected poorly on Mays's character.

## C. New Trial in the Interest of Justice

¶36 We turn finally to Mays's argument that we should exercise our discretionary authority to order a new trial in the interest of justice pursuant to WIS. STAT. § 752.35.[6] "We exercise our authority to reverse in the interest of justice under … § 752.35 sparingly and only in the most exceptional cases." *State v. Schutte*, 2006 WI App 135, ¶62, 295 Wis. 2d 256, 720 N.W.2d 469. Mays does not persuade us that this is one of those cases.

¶37 Mays argues that trial counsel's deficiencies, when combined with the State's assertion that Mays conspired with counsel to present false testimony, and with the gang-related evidence, prevented the jury from being presented with

---

[5] Mays does not argue that any of this other evidence was improperly admitted.

[6] WISCONSIN STAT. § 752.35 provides:

> In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

a fair, two-sided case. Mays argues that the real controversy—whether he was knowingly involved in an attempted robbery—was not fully tried. He argues that his trial instead focused on whether he conspired with his attorneys to present false testimony and on irrelevant and inflammatory evidence of gang activity.

¶38 We reject these arguments and, instead, agree with the State that the real controversy was fully tried. As the State argues, the jury was presented with testimony and statements from K.M., McInnis, Jackson, and Mays, along with testimony from several other witnesses, all directed at the central issue of whether Mays knowingly participated in the attempted robbery of K.M. Further, the gang-related evidence was not a distraction from the real controversy and was instead relevant evidence for the reasons already explained.

### *Conclusion*

¶39 For the foregoing reasons, the judgment and order of the circuit court are affirmed.

> *By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.